Decided August 9, 1897.

·STATE *v.* CHILDERS.

[49 Pac. 801.]

|    |     |
|----|-----|
| 32 | 119 |
| 41 | 508 |
| 32 | 119 |
| 45 | 115 |

INDICTMENT FOR FORGERY.—An indictment for uttering a forged instrument need not set out the tenor of the writing, the old law on that subject having been modified by our statute. See the form of indictment in Hill's Ann. Laws, p. 1004.

VARIANCE.—Where an indictment for uttering a forged indorsement of a county warrant set out the warrant as "for road work, Desk No. 9," when in fact it was "for road work, Dist. No. 9," the variance was immaterial, there being no question as to identity: *State* v. *Thompson*, 28 Or. 296, approved.

PRESUMPTION—ADMISSIBILITY OF EVIDENCE.—On appeal from a conviction it will be presumed, where the bill of exceptions does not purport to contain all the evidence, that there was other testimony rendering admissible certain documents that were objected to.

Idem.—Where defendant in a criminal prosecution did not offer himself as a witness, and his testimony as taken on a former trial on the same indictment was read to the jury on behalf of the state, as declarations tending to prove guilt, it must be presumed, in the absence of a certificate showing that the bill of exceptions contains all the evidence, that whatever foundation was neceeary for the admission of such testimony was laid.

Knowledge of Agent.—Where the person, alleged to have been defrauded by means of the forged endorsement of a county warrant, purchased it through an agent, who knew that defendant had no interest in it, and saw him indorse it, but did know what names were written thereon, it cannot be said that he knew such indorsement had been forged.

Former Acquittal—Practice.—An objection that the jury did not find on a plea of former acquittal is not available when first made by a motion for a new trial, since the action of the court in granting or overruling such a motion is not reviewable: *State* v. *Foot You,* 24 Or. 61, approved.

Idem.—Where there was no verdict on a plea of former acquittal, it will be presumed that defendant either withdrew or waived such plea, in the absence of a bill of exceptions showing that he had requested the trial court to instruct the jury to find on the issue raised thereby, and it had refused to do so, or that the jury had been discharged without performing such duty after having been so instructed.

Necessity for Bill of Exceptions.—An objection that the grand jury which found the indictment against defendant was not selected in the manner prescribed by law is unavailing on appeal, where the bill of exceptions contains no reference to the manner of its impaneling the grand jury.

From Multnomah:    Thomas A. Stephens, Judge.

Ben. Childers was convicted of forging the signature of A. Hallock on the back of a road fund warrant, and appeals.

Affirmed.

For appellant there was a brief and an oral argument by *Mr. Benjamin P. Welch.*

For the state there was a brief over the names of *Cicero M. Idleman,* attorney-general, and *Chas. F.*

*Lord*, district attorney, with an oral argument by *Mr. Thad. S. Potter.*

Opinion by Mr. CHIEF JUSTICE MOORE.

The defendant, Ben. Childers, was indicted and tried for and convicted of, the crime of knowingly uttering and publishing as true and genuine a forged indorsement of a county warrant of Multnomah County, with intent to injure and defraud one M. M. Bloch; and, having been sentenced to imprisonment in the penitentiary for the term of six years, he appeals from the judgment thus rendered, assigning numerous errors, which will be considered.   The indictment having set out a warrant of the tenor following:  "No. 8117.   Portland, Oregon, July 2, 1894. Treasurer of Multnomah County, Oregon:  Pay to A. Hallock, or order, thirty-one 56-100 dollars and ———— cents, out of the road funds in your hands, not otherwise appropriated.   Class 32 for road work. Desk No. 9.   By order of the county court.   T. C· Powell, clerk of Multnomah County, by H. C. Smith, deputy,"—there was introduced in evidence, over the defendant's objection and exception, a county warrant of said county, issued for "road work, Dist· No. 9"; and it is contended that there was such a variance between the allegations of the indictment and the recital of the warrant as to render the latter inadmissible in evidence.   The rules of the common law required the prosecuting officer to set out, if possible, in an indictment for forgery, the alleged fraudulent writing *in hæc verba*, to enable the court, from an inspection of the pleading, to judge whether

the instrument claimed to have been unlawfully uttered was one of which forgery might be committed: 2 Bishop's New Criminal Procedure, § 403; *State* v. *Callendine,* 8 Iowa, 288; *Santolini* v. *State* (Wyo.), 42 Pac. 746. The form prescribed for an indictment for forgery does not provide that the instrument which is the subject thereof shall be set out in *hæc verba* (Hill's Ann. Laws, p. 1004); and in an action on an indictment alleging the substance and legal effect only of a writing claimed to have been forged, it was held that a variance of two days in the dates stated in the pleading and as recited in the instrument was immaterial: *State* v. *Thompson,* 28 Or. 296 (42 Pac. 1002). It would seem that, under our statute, the common-law rule has been abrogated; that it is now unnecessary to set out in the indictment the tenor of a written instrument alleged to have been forged, and that the substance or legal effect thereof is sufficient to enable the court to judge whether the writing is the subject of forgery, and to permit the defendant to make his defense.

The state having elected to set out in the indictment the tenor of the instrument, the question is presented whether it is bound to prove the fact as alleged, thus rendering the order inadmissible in evidence. It is an elementary rule that, when a thing necessary to be mentioned in an indictment is described with unnecessary particularity, all the circumstances of the description must be proved; for they are all made essential to the identity, and hence a variance in the proof is usually fatal:

1 Greenleaf on Evidence, § 65. "It may be observed," says this learned author at section 58, "that any allegation which narrows and limits that which is essential is necessarily descriptive. Thus, in contracts, libels in writing, and written instruments in general, every part operates by way of description of the whole. In these cases, therefore, allegations of names, sums, magnitude, dates, durations, terms, and the like, being essential to the identity of the writing set forth, must, in general, be precisely proved." Under the very strict rules announced by Professor Greenleaf, the variance complained of may have been fatal, but we think the better doctrine is expressed by EARL, J., in *Harris* v. *People*, 64 N. Y. 148, in which he says: "The strictness of the ancient rule as to the variance between the proof and the indictment has been much relaxed in modern times. Variances are regarded as material, because they may mislead a prisoner in making his defense, and because they may expose him to the danger of being again put in jeopardy for the same offense." Applying this modern rule to the case at bar, we think the defendant could not have been misled in making his defense by this variance; and, further, the identity of the county warrant described in the indictment with the one offered in evidence is unquestionable; and, such being the case, the judgment rendered will afford a bar to another prosecution for the same offense. From an inspection of the indictment, the court could say, as a matter of law, that the writing imported an obligation to pay a given sum of

money, and was therefore a subject of forgery; and, the amount therein specified not being involved in the recital that it was executed for road work either in Desk or Dist. No. 9, we deem the variance immaterial.

It is also contended that the court erred in permitting the state to offer in evidence, over the defendant's objection and exception, what purported to be an order issued by A. Hallock, requesting the clerk of said county to deliver to the defendant the county warrant in question. The rule is well settled that where a party is charged with knowingly uttering a forged instrument, and the fact of his possession of the paper is shown, but his knowledge of its character is disputed, it is admissible to show that, shortly before or after the event charged, he held or uttered similar forged instruments, to an extent which makes it impossible that he should be ignorant of the forgery: Wharton on Criminal Evidence, § 39; 3 Rice on Evidence, § 494. Mr. Wharton, in his work on Criminal Law ( section 649), referring to this question, says : "Where the *scienter* or *quo animo* is requisite to, and constitutes a necessary and essential part of, the crime with which the person is charged, and proof of such guilty knowledge or malicious intention is indispensable to establish his guilt in regard to the transaction in question, testimony of such acts, conduct, or declarations of the accused as tend to establish such knowledge or intent is competent, notwithstanding they may constitute in law a distinct crime." To the same effect, see, also, 1 Greenleaf

on Evidence, § 53, and 3 Greenleaf on Evidence, § 15, and notes. There is no evidence in the record, however, that tends to show that defendant disputed his knowledge of the character of the instrument, or claimed the right, as the agent of Hallock or otherwise, to indorse the county warrant for him; but inasmuch as the bill of exceptions does not purport to contain all the evidence introduced at the trial, in the absence of which it must be presumed that such evidence was before the court, it thereby renders admissible the forged order of Hallock, upon the faith of which the defendant obtained the warrant in question from the county clerk.

The defendant, at the first trial on this indictment, was a witness in his own behalf, and, his testimony being taken in shorthand, the stenographer reporting it was permitted, over the defendant's objection and exception, to read the notes thereof to the jury; and it is now contended that, the defendant not having offered himself as a witness at this second trial, the record of his testimony given at the former trial could not be given in evidence against him, and that the court erred in permitting it to be read to the jury. The testimony in question was highly prejudicial to the defendant, being tantamount to a confession of his guilt; and as declarations against interest, when voluntarily made, are admissible, as tending to prove guilt (*Teachout* v. *People*, 41 N. Y. 7; *People* v. *Wentz*, 37 N. Y. 303; *Commonwealth* v. *Coffee*, 108 Mass. 285; *Commonwealth* v. *Crocker*, 108 Mass. 464), it must be presumed, in the absence of a certificate by the trial judge

showing that the bill of exceptions contains all the evidence, that a proper foundation was laid, if necessary, for the admission of the testimony given by the defendant at his former trial.

It is insisted that the court erred in its refusal to instruct the jury to return a verdict of acquittal after the state had rested its case. The point contended for assumes that the evidence did not support the allegations of the indictment. M. M. Bloch, the person alleged to have been defrauded by the defendant, testifies that he never had any conversation with Childers, nor did he know that the latter ever had the county warrant in his possession, but that he received it from, and paid the face value thereof to, one Gee. Gee also testifies that he bought the warrant from defendant; that he saw him indorse it; that he did not read the names written thereon, but that he knew Childers had no interest in it. Bloch, further testifying in relation to the county warrant, in answer to the question, " Under what circumstances,— how did you get it from Gee?" says: " Mr. Gee was buying warrants for me, and what he was buying he was turning over to me every evening, and among others was this paper." It will thus be seen that Gee was the agent of Bloch for the purpose of purchasing county warrants, so that a delivery by the defendant to Gee was a delivery to Bloch. It is claimed, however, that Gee, at the time he purchased the warrant, knew the indorsement thereof was forged, and, such being the case, his knowledge was that of the principal, and hence Bloch was

not defrauded by the purchase of a county warrant, the indorsement of which he knew was forged. Gee, referring to the indorsement of the warrant, in answer to the question, "Did you see the name signed on the back of it?" says: "Yes; I saw the name signed on the back of it, but I never read it to see what it was. I am not much of a reader anyway." While this witness testifies that he knew Childers had no interest in the warrant, and that he saw him indorse it, it does not appear that he knew what names were written thereon, and hence it cannot be said that he knew the indorsement had been forged, even if his knowledge thereof could be imputed to Bloch.

The defendant, in addition to his plea of not guilty, entered a plea of former acquittal; but, the jury having made no finding thereon, he moved the court to set aside the verdict of guilty as charged, and for a new trial. The motion being denied, it is maintained that the court erred in its refusal to grant his request. Our statute provides that: "An issue of fact arises (1) upon a plea of not guilty; or (2) upon a plea of a former conviction or acquittal of the same offense": Hill's Ann. Laws, § 1340. "And upon a plea of former conviction or acquittal of the same crime, the verdict is either 'for the state,' or 'for the defendant'": Hill's Ann. Laws, § 1378. In California it is held, under a similar statute, that a defendant is entitled to a verdict on each plea; that, when the record does not disclose that he withdrew or waived either plea, it will not be presumed that he did so; and that if more than one

plea be interposed, and the jury return a verdict
of guilty only, no judgment of conviction can . be
pronounced on such a finding: *People* v. *Kinsey,*
51 Cal. 278; *People* v. *Helbing,* 59 Cal. 567; *People*
v. *Fuqua,* 61 Cal. 377. Whatever the rule may be
in California, we do not think the action of the
court which is sought to be reviewed is properly
before us for consideration; for it has been repeat-
edly held by this court that a motion for a new
trial is addressed to the sound discretion of the
trial court, and that its ruling thereon cannot be
assigned as error on appeal. See the cases cited to
this effect in *State* v. *Foot You,* 24 Or. 61 (32 Pac.
1031, and 33 Pac. 537). Neither would a motion
in arrest of judgment, under our statute, correct
the error complained of, since such motion is avail-
able only when the grand jury which found the
indictment had no legal authority to inquire into
the crime charged, because the same was not tria-
ble within the county, or when the facts stated in
the indictment do not constitute a crime: Hill's
Ann. Laws, § 1391, and subdivisions 1 and 4 of
section 1322. Had the defendant requested the trial
court to instruct the jury to find upon the issue
raised by his plea of a former acquittal, and it had
refused to do so, or the jury had been discharged
without performing this duty, after having been so
instructed, the question would have been undoubt-
edly reserved, and could be brought here by bill of
exceptions for review, in the absence of which we
must presume that the defendant either withdrew
or waived his plea of a former acquittal.

It is also insisted that the grand jury which found the indictment was not selected in the manner prescribed by law, but, since the bill of exceptions contains no reference to the manner of impaneling that body, the point contended for must necessarily prove unavailing.   Some objection is also made because the dates upon which the indictment purports to have been found and returned have been erased, and others inserted in lieu thereof, but we cannot think the defendant has been prejudiced thereby.   Finding no error in the record, the judgment must be affirmed, and it is so ordered.

AFFIRMED.

Decided January 17, 1898; rehearing denied.