Argued April 9, affirmed April 29, rehearing denied November 12, 1919.

## STATE v. FRASIER.*

(180 Pac. 521.)

**Criminal Law—Jurisdiction.**

1. Where a court has jurisdiction of a crime a statute simply conferring same jurisdiction on another court does not deprive former of its jurisdiction, in absence of an express provision or clear implication to that effect, but merely confers concurrent jurisdiction.

**Criminal Law—Federal Jurisdiction.**

2. The criminal jurisdiction of federal courts is confined to crimes under federal statutes except as to common-law offenses committed

---

*On necessity in indictment for forgery or uttering forged instrument of naming person to whom instrument was passed, see note in 31 L. R. A. (N. S.) 1046.

Authorities passing on the question as to whether making or altering mere memorandum in the nature of a receipt or acquittance constitutes forgery are collated in a note in 54 L. R. A. 794.

On power of legislature to provide for indictment in county or district other than where crime alleged to have been committed, see note in 7 L. R. A. (N. S.) 669.

As to who is within protection of provision of Bankruptcy Act as to use in criminal proceeding of testimony given by bankrupt, see note in L. R. A. 1917B, 614.                    REPORTER.

on the high seas, or in places or districts within the states which
have been ceded to the United States, and which, when the crime
was committed, were under the exclusive jurisdiction of the United
States.

### Criminal Law—Jurisdiction—Offenses Against State and United States.

3. Offenses which are directed against the sovereignty of the
state or which affect its population are within the jurisdiction of
the state courts, although such offenses may also be directed against
the sovereignty of the federal government, and may be thus within
the jurisdiction of both the federal and the state courts.

### Criminal Law—Jurisdiction of State Court—Forgery.

4. Where the uttering of a forged receipt constituted forgery
under the laws of the state, the jurisdiction of the state court is
not ousted by the fact that the same acts, consisting of uttering and
publishing a forged instrument to a referee in bankruptcy appointed
by the federal court, are also an offense under the laws of the
United States.

### Forgery—Indictment—Purport of Instrument.

5. Where an indictment for forgery described a false and forged
"writing, check, receipt and instrument, being in the form of and
purporting to be an indorsed, canceled and paid check, and being in
the words and figures as follows, to wit," followed by a copy of the
check with the indorsement, words, figures and marks thereon, it
was not essential that the words "purporting to bear the indorse-
ment of," should be employed.

### Forgery—Indictment—Legal Efficacy of Instrument.

6. In an indictment for uttering a forged receipt, it should ap-
pear from the indictment that the receipt is *prima facie* capable of
being used as legal proof in some way.

### Forgery—"Receipt"—Canceled Check.

7. A canceled check or check indorsed and stamped "Paid" may
pe the subject of forgery under Section 1996, L. O. L., such an in-
strument serving in the business world as a voucher or receipt for
the payment of the amount of money named in the check.

### Indictment and Information—Statutory Offense.

8. It is the general rule that, if an indictment is based upon a
statute, it is sufficient if it follows the wording thereof.

### Forgery—Indictment—Name of Person Defrauded.

9. Under Section 1996, L. O. L., an indictment for uttering a
forged receipt need not state the name of the person defrauded.

### Forgery—Indictment—Proof.

10. It being alleged in an indictment that a forged check was
published to A., as a referee in bankruptcy, it was necessary for the
proof to show the same.

**Forgery—Evidence.**

11. Under an indictment for uttering a forged canceled check as a receipt, alleging that it was published to A. as referee in bankruptcy, it was proper for the state to show that A. was acting as a referee in bankruptcy by appointment of the federal court, and to introduce evidence of the proceedings in bankruptcy in the bankrupt estate of the defendant, as part of the circumstances of the transaction relating to the canceled check.

**Forgery—Indictment—Tenor of Instrument.**

12. Under Section 1996, L. O. L., relating to forgery, it was not necessary to set out the tenor of the instrument alleged to be forged, in view of page 1013, Form 15, L. O. L.

**Forgery—Indictment—Name of Person Defrauded.**

13. Under Section 2004, L. O. L., the name of the person defrauded need not be inserted in an indictment for uttering a forged receipt.

**Forgery—Indictment—Legal Efficacy of Instrument.**

14. An averment in an indictment for uttering a forged receipt in the form of a canceled check, indorsed and stamped "Paid," etc., that the instrument was published to A., as referee in bankruptcy, as a receipt and as evidence of the payment of a debt, was all the extrinsic facts necessary to set out, in addition to the instrument itself, to show that the receipt, if it was genuine, would be of force as legal proof.

**Forgery—Indictment—Extrinsic Matter.**

15. In an indictment for uttering a forged instrument, where the meaning of the transaction can be sufficiently extracted from the instrument itself, it is not necessary to state matters of evidence so as to make out more fully the charge.

**Indictment and Information—Certainty.**

16. Under Section 1449, L. O. L., an indictment will not be held insufficient where the acts charged as a crime were displayed with such degree of certainty as to fully inform defendant of nature of offense with which he was charged, and to enable a person of common understanding to know what is intended and to prepare for his defense.

**Forgery—Indictment—Receipt.**

17. A receipt for money paid is not such instrument that an indebtedness from the person to whom it purports to be given to the maker of it need be shown in an indictment for uttering a forged receipt, because, if in fact there were no such indebtedness, still the party giving it would be liable for the money acknowledged to have been received.

**Forgery—Alteration of Instrument.**

18. One who alters a genuine instrument may be charged with forgery of the entire instrument.

Criminal Law—Weight of Evidence—Review.

19. It is not the province of the Supreme Court on appeal in a criminal case to consider the weight of the evidence.

Forgery—Uttering Instrument—Evidence—Directed Verdict.

20. In a prosecution for uttering a forged receipt, namely, a canceled check stamped "Paid" and indorsed, *held,* that evidence strongly supported a conviction, so that a request to direct a verdict of acquittal was properly denied.

Forgery—Instructions.

21. In a prosecution for uttering a forged receipt, namely, a canceled check stamped "Paid," and indorsed, an instruction relative to the theory of the state that the indorsement was forged on a check, and that, taken together with the check, it operated and was used as a receipt for money paid, *held* properly to submit the issues in the case.

Criminal Law—Orders Appealable—Motion for New Trial.

22. General Laws of 1915, page 96, amending Section 548, L. O. L., so as to allow an appeal from an order setting aside a judgment and granting a new trial, does not apply to criminal actions.

Criminal Law—Appeal—Exceptions.

23. In a prosecution for uttering a forged receipt, accused cannot complain that account-books, exhibits in the case, were removed from courtroom during argument, where it appeared that they were returned, and an offer made by counsel for the state to have them sent to the jury while they were deliberating, but, objection being made by defendant's counsel, they were not so disposed of; no exception having been taken in regard to the matter nor any ruling having been made.

ON PETITION FOR REHEARING.

Bankruptcy—Testimony of Bankrupt Used Against Him in Criminal Prosecution.

24. Bankruptcy Act of 1898, Section 7 (U. S. Comp. Stats. Section 9591), providing that no testimony given by bankrupt shall be offered against him in any criminal proceeding, does not apply to the language and acts of a bankrupt who in the course of his examination upon the witness-stand commits a fresh crime, such as perjury or the uttering of a forged instrument.

From Benton: JAMES W. HAMILTON, Judge.

Department 2.

The defendant E. J. Frasier was indicted by the grand jury of Lane County, Oregon, for the crime of uttering a forged receipt. The case was transferred to Benton County where he was tried and convicted.

From the judgment of sentence, defendant appeals.
The charging part of the indictment is as follows:

"The said E. J. Frasier, on the 11th day of August, A. D. 1917, in the County of Lane, State of Oregon, then and there being did then and there willfully, knowingly and feloniously, utter and publish, as true and genuine, to one A. M. Cannon, as Referee in Bankruptcy, a certain false and forged writing, check, receipt and instrument, as evidence of money paid on a debt, knowing the same to be false and forged, the said writing, check, receipt and instrument being· in the form of and purporting to be an indorsed, canceled and paid check, and being in words and figures as follows, to wit:

     " 'Eugene, Oregon, Oct. 10th, 1909, No. ——.
         " 'FIRST NATIONAL BANK,      $69.00
         " 'Eugene, Oregon.
Pay to T. W. Harris.....................or bearer
Sixty-nine and No 100.....................Dollars
Med. Services

                 " 'E. J. FRASIER.'
bearing the indorsement, 'T. W. Harris' bearing the impression of an encircled letter 'P,' and being perforated by a mark in the following letters and figures, 'PAID 10 11 09'; with intent to injure and defraud; contrary to the statutes, etc."

The defendant demurred to the indictment upon the following grounds: First. That the crime charged is not triable within the County of Lane, State of Oregon. Second. That the facts therein stated do not constitute a crime.      AFFIRMED.

For appellant there was a brief over the names of *Messrs. Weatherford & Wyatt* and *Mr. Whitton Swafford,* with oral arguments by *Mr. James K. Weatherford* and *Mr. Swafford.*

For the State there was a brief with oral arguments by *Mr. Arthur Clarke,* District Attorney for Benton

County, *Mr. George M. Brown,* Attorney General, and *Mr. L. L. Ray,* District Attorney for Lane County.

BEAN, J.—The overruling of the demurrer to the indictment is assigned as error, and several objections and exceptions to the testimony are upon the ground of the insufficiency of the charge.

The contention is made that by reason of the allegation in the indictment that the defendant did "wrongfully and unlawfully and feloniously, utter and publish, as true and genuine, to one A. M. Cannon, as Referee in Bankruptcy, a certain false and forged writing," etc., if the indictment is sufficient to constitute a crime, the question would be one for the federal courts and not in the state courts.

Section 1996, L. O. L., declares *inter alia* that if anyone shall falsely make, alter, forge or counterfeit any writing, obligatory promissory note evidence of debt, indorsement, check "or any receipt for money or other property, or any acquittal or discharge for money or other property," with intent to injure or defraud anyone, or shall with such intent knowingly utter or publish as true or genuine any such false, altered, forged or counterfeited writing, instrument, or matter whatever, such person, upon conviction thereof, shall be punished.

It is clear that the statute of this state denominates the utterance of a forged receipt as a crime against the laws of this state, and the courts of this state have jurisdiction of the crime unless precluded by some federal law. This is conceded, but it is contended that as the forged instrument is alleged to have been passed to A. M. Cannon, as referee in bankruptcy, the courts of the United States have exclusive jurisdiction over the offense.

1-4. Where a court has jurisdiction of a crime, a statute simply conferring the same jurisdiction on another court does not deprive the former of its jurisdiction, in the absence of an express provision or clear implication to that effect, but merely confers concurrent jurisdiction. In some cases the jurisdiction of the federal courts over offenses is exclusive of the jurisdiction of the state courts, while in others it is concurrent: 16 C. J., §§ 173, 174, pp. 150, 151. The criminal jurisdiction of the federal courts is confined to crimes under federal statutes, except as to common-law offenses committed on the high seas or in places or districts within a state which have been ceded by the state to the United States, and which when the crime was committed were under the exclusive jurisdiction of the United States. Offenses which are directed against the sovereignty of the state or which affect its population are within the jurisdiction of the state courts, although such offenses may also be directed against the sovereignty of the federal government, and may be thus within the jurisdiction of both the federal and the state courts: 16 C. J., § 185, p. 160. We will assume without deciding that the federal courts would have jurisdiction of the offense charged. It is unnecessary to go further. Where certain acts constitute forgery under the laws of the state the jurisdiction of state courts is not ousted by the fact that the same acts are also an offense under the laws of the United States: 19 Cyc., p. 1391. The courts of this state have jurisdiction of the crime referred to in the indictment whether or not the United States courts have jurisdiction of such crime: *Territory of Oregon* v. *Coleman,* 1 Or. 191, 192. In *Cross* v. *North Carolina,* 132 U. S. 131 (33 L. Ed. 287, 10 Sup. Ct. Rep. 47, see, also, Rose's U. S. Notes), it was held that: A state

is not deprived of jurisdiction over a person who criminally forges a bill of exchange or promissory note with intent to defraud, in violation of its statutes, or of its power to punish the offender committing such offense, by the fact that he follows this crime up by committing against the United States the further crime of making false entries concerning such bill or note on the books of a national bank, with intent to deceive the agent of the United States designated to examine the affairs of the bank, and in violation of the statute of the United States in that behalf. It is stated in 12 R. C. L., Section 16, page 152, as follows:

"The courts of the states and territories may punish the forgery of treasury notes of the United States, although Congress has passed an act for the punishment of such offenses."

As to the place where the alleged forged instrument was published, it does not appear either from the allegations of the indictment or the testimony that such place was ceded to and under the exclusive jurisdiction of the United States as provided by Section 711, United States Revised Statutes: U. S. Comp. Stats. (1916), § 1233; 5 Fed. Stats. Ann. (2 ed.), p. 922, see, also, 8 R. C. L., § 57, p. 98. The cases cited by the defendant upon this point are mostly where the prosecution of the crime is within the exclusive jurisdiction of the federal courts being a violation of the United States statute, as prosecution for perjury in making a false oath under the Homestead Act of Congress, or in swearing falsely before the register of the United States land office in a proceeding touching the public land, and not a violation of the state statute.

The further contention is made: First. That the indictment does not state facts sufficient to constitute a crime, in that the indictment contains no allegation of

appointment of Mr. Cannon by any court. Second. That in order to be the subject for forgery, the instrument upon its face must if it were genuine be of some benefit, force or effect or injury to another. It will be observed that the instrument in question is alleged to have been forged and is set out in full in the indictment. The manner in which it is set forth in an indictment is criticised by the defense, especially that part of the indictment which states, "bearing the indorsement 'T. W. Harris.'" It should be borne in mind that the indictment further states "the said writing, check, receipt and instrument being in the form of and purporting to be an indorsed, canceled and paid check," therefore it is apparent from the face thereof that it is the forged instrument that is set out therein and that the words "bearing the indorsement" refer to the purported instrument only, and is not an allegation that the check was indorsed by T. W. Harris.

5. According to the later doctrine, where an indictment alleges that an instrument is "forged," it sufficiently imputes falsity to the instrument so that the pleader in setting out the instrument may aver that the defendant forged "a certain will" or "a certain false, etc., paper writing purporting to be the last will" that is the words "purporting to be" may be omitted: Wharton's Criminal Pleading & Practice (9 ed.), § 184; Wharton's Criminal Law (10 ed.), § 738.

In the indictment in question the instrument is described as a false and forged "writing, check, receipt and instrument being in the form of and *purporting to be* an indorsed, canceled and paid check, and being in words and figures as follows, to wit": Then follows a copy of the check with the indorsement, words, figures and marks thereon. Hence it is not essential that the words "purporting to bear indorsement of T. W.

Harris'' should be employed as the check or receipt had already been described as ''purporting to be an indorsed, canceled and paid check,'' and there is no room for misunderstanding in regard thereto.

6, 7. As to the effect of the instrument alleged to be forged and to have been uttered, it should appear from the indictment that it is *prima facie,* capable of being used as legal proof in some way; for example, as a receipt in a suit against the forger by the person whose receipt is forged: Wharton's Criminal Law (10 ed.), § 739; 19 Cyc. 1394. It cannot be questioned but that in an action by T. W. Harris to recover money of defendant Frasier, the document described in the indictment, if genuine, could be used as legal proof of the payment by defendant of the amount of the check. It is well known in the business world that a canceled check, or check indorsed and stamped ''Paid,'' serves as a voucher or receipt for payment of the amount of money named in the check. In Wharton's Criminal Law (10 ed.) (Kerr), Section 672, the author states:

''An instrument, to be the subject of forgery, must be one within the statute, and which, if genuine, would have some legal effect, but it is not necessary that it should be shown to be a perfect instrument, and it is unnecessary for the indictment or information to allege how the instrument would create, increase, diminish, or defeat a pecuniary obligation, or how it would transfer or affect the title to property. Thus, a receipted bill for goods charged to have been forged, being set out, and purporting on its face to be an instrument which may be forged under the statute, the indictment or information need not contain further allegations to show that it was such an instrument, or to show how it could be used as an instrument of fraud, or that it was so used, in fact. It is not necessary to allege the existence of the debt, the discharge of which the instrument alleged to be forged was intended to represent, except under unusual circum-

stances; or that accused was indebted to the person intended to be defrauded by such receipt. * * ''

See, also, *State* v. *Dunn,* 23 Or. 562 (32 Pac. 621, 37 Am. St. Rep. 704).

It is elementary law that an ordinary receipt or acquittance may be the subject of forgery: Section 1996, L. O. L.; 2 Bishop's New Criminal Law, § 529. A receipt is defined as "A written acknowledgment of payment of money or delivery of chattels"; 2 Bouvier's Law Dictionary, p. 832. See, also, 7 Words and Phrases, p. 5987. In the case of *Kegg* v. *State of Ohio,* 10 Ohio, 75, it was held that an indorsement on a note of a partial payment, in the handwriting of the maker, without any signature, but made in the presence, with the concurrence, and by the direction of the payee, is a receipt, the alteration of which by the payee is forgery. " 'Settled, Sam. Hughes,' at the foot of a bill of parcels, was held to support an allegation of a receipt without any explanatory averment": Wharton's Criminal Pleading & Practice (9 ed.), § 185.

8–13. It is the general rule that if an indictment is based upon a statute it is sufficient if it follows the wording thereof. It was not under our statute absolutely necessary to allege to whom the receipt was uttered or passed. It being alleged that it was published to A. M. Cannon, as referee in bankruptcy, it was necessary for the proof to show the same. This, we think, could be done under the allegation of an indictment by showing that he was acting as a referee in a bankruptcy matter by appointment of the federal court. Under our statute, it is not necessary to set out the tenor of the instrument alleged to have been forged: See Form 15, p. 1013, L. O. L.; *State* v. *Childers,* 32 Or. 119 (49 Pac. 801); 19 Cyc. 1398. The name of the person defrauded need not be inserted in the indict-

ment: Section 2004, L. O. L.; *State of Oregon* v. *Lurch,* 12 Or. 99, (6 Pac. 408); *State* v. *McElvain,* 35 Or. 365 (58 Pac. 525).

14–16. This case is entirely different from that of *People* v. *Cole,* 130 Cal. 13 (62 Pac. 274), cited among others and relied upon by counsel for defendant, in which it was alleged in the indictment that the defendant published and attempted to pass to one L. a certain forged check ''as the true and genuine check of S. B. Smith,'' the check being set out *in haec verba* and signed ''E. J. Cole,'' indorsed on back ''S. B. Smith,'' with intent, etc. The check did not purport to be signed by S. B. Smith but by E. J. Cole, the defendant, and it was held that the check showed upon its face that it was not forged, but rightly signed by the defendant; that if the indorsement of S. B. Smith was forged, the information should have so stated. In the instant case the indictment shows that the whole docu-ment, including the check, indorsement, impression and marks, is alleged to be forged, and to have been passed as true and genuine as evidence of the payment of a debt, that is, as the receipt or acquittance of T. W. Harris. The charge does not state or imply that the indorsement of T. W. Harris was forged for the pur-pose of making him appear to be liable as an indorser on the check, except in so far as the whole instrument taken as a voucher or receipt might show liability. The averment that the instrument was published to A. M. Cannon, as referee in bankruptcy, as a receipt as evidence of the payment of a debt, was all the ex-trinsic facts necessary to set out, in addition to the in-strument itself, to show that the receipt, if it were genuine, would be of force as legal proof, so as to comply with the rule in 2 Bishop on Criminal Law (7 ed.), Section 545, and 1 Wharton's Criminal Law

(10 ed.), Section 740. Where the meaning of the transaction can be sufficiently extracted from the instrument itself, it is not necessary to state matters of evidence so as to make out more fully the charge: 1 Wharton's Criminal Law (10 ed.), § 740, p. 674. The document not being in the regular form of a receipt, it was appropriate to state in the indictment that it was published as true and genuine as evidence of money paid on a debt. Thus the whole transaction was displayed in the indictment with such a degree of certainty to fully inform the defendant of the nature of the offense with which he is charged and to enable a person of common understanding to know what is intended and to prepare for his defense, and is sufficient under the statute: See Form 15, p. 1013, L. O. L.; *State* v. *Mishler,* 81 Or. 548 (160 Pac. 382). Section 1449, L. O. L., provides:

"No indictment is insufficient, nor can the trial, judgment, or other proceedings thereon be affected by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Therefore, there was no error in overruling the demurrer to the indictment nor in admitting in evidence the order of the federal court appointing A. M. Cannon as referee in bankruptcy, and evidence of the proceedings in bankruptcy in the bankrupt estate of Edward J. Frasier, the defendant, as a part of the circumstances of the transaction relating to the canceled check. The weight of authority appears to be to the effect that the name of the person to whom the forged instrument was uttered or upon whom passed need not be set out, in the absence of a statutory provision requiring it to be done: 1 Wharton's Criminal Procedure, § 675. Our statute does not contain such a re-

quirement. Hence the averment that the receipt was published to A. M. Cannon as referee, etc., was sufficient, in order to admit the proof of the official character of A. M. Cannon. There was no error in overruling the objection of defendant to such proof upon the ground that the indictment was insufficient in that respect. The purpose of this averment was not so much to show the name of the person or officer to whom the receipt was uttered as to indicate the manner in which the spurious receipt was attempted to be made available.

It is claimed by defendant that the averments of the indictment should recite the indebtedness of the defendant to T. W. Harris, and also that the court erred in admitting over the objections and exceptions of counsel for defendant proof of such indebtedness, for the reason that the indictment did not contain such an averment.

17. A receipt for money paid is not such an instrument that an indebtedness from the person to whom it purports to be given, to the apparent maker of it, need be shown in the indictment; because, if in fact there were no such indebtedness, still the party giving it would be liable for the money acknowledged to have been received: 1 Wharton's Criminal Procedure (10 ed.) (Kerr), § 672; 2 Bishop's New Criminal Law, § 546, subd. 5.

18. If a defendant has altered a genuine instrument, he may be charged with the forgery of the entire instrument: 19 Cyc. 1394c; *People* v. *Brotherton,* 47 Cal. 388. In the case at bar, the whole receipt is alleged to be forged. The indorsement of T. W. Harris appearing on the canceled check served as a signature to the receipt just as effectively as if it had appeared after the statement that the check was paid. It is not essen-

tial in an indictment for forgery to aver separately as
to each part of the instrument alleged to be forged
that such parts were forged. It was therefore com-
petent over the objections and exceptions of the de-
fendant for the state to prove that the signature of
T. W. Harris was not genuine, and all of the circum-
stances in relation to the canceled check including the
testimony in relation to the fraudulent stamping and
perforating the same as paid. Most of the objections
of the defendant to the testimony are based upon the
insufficiency of the indictment and need not be further
adverted to.

Defendant at the close of the case moved the court
to direct a verdict of not guilty. This raises many of
the questions presented in the case which have already
been referred to.

As we understand the position of the defendant the
motion for a directed verdict is made and here urged
upon the ground that there is no basis for the testi-
mony introduced by the state adduced to show that
the receipt was spurious. Referring again to the in-
dictment, the question is asked in defendant's reply
brief: "What writing was forged?" Was the check,
receipt or instrument forged, or was it some other part
of the paper that was forged? Answering this ques-
tion again, the indictment alleges that the whole in-
strument was forged. The receipt is not referred to
in the indictment as "check, receipt, or instrument,"
as in the question, but as "check, receipt and instru-
ment," only one document is referred to under the dif-
ferent names.

Considering the motion to direct a verdict from the
record, the testimony tended to support the allegations
of the indictment and to show that on August 11, 1917,

the defendant presented the canceled check or receipt
to A. M. Cannon, as referee in bankruptcy, in the mat-
ter of the claim of Dr. T. W. Harris for about $153
against the bankrupt estate of defendant, to which ob-
jection had been made, and represented that the check
had passed through the bank upon which it was drawn,
and had been paid as shown by the stamp thereon, and
that the claim of Dr. Harris had been paid.    The tes-
timony indicates that the check which forms a part of
the receipt was never indorsed by T. W. Harris, had
never been presented to or paid, stamped or marked
by the bank and that the receipt was a forgery; that
on October 8, 1909, a check of defendant's for $69 was
received by Olds, Wortman & King, of Portland, Ore-
gon, and credited to defendant and paid on October 11,
1909, in due course of business by the First National
Bank of Eugene, and charged to defendant's account;
that among the stubs of the checks of defendant was
one for $69, apparently written on October 6, 1909, to
Olds (the next word beginning with W., the remainder
of the word not being discernible) & King.    So that
one investigating the questioned check at the bank
would find that a check for $69 was charged to defend-
ant's account at about the date of the check in ques-
tion.    The testimony further tended to show that the
form of the check which is a part of the instrument
questioned was not in use by the bank named at the
time the check purports to have been drawn, nor of the
date of its cancellation; that the cancellation by per-
foration was not done with the machine of that bank,
and that the rubber stamp with which the encircled
"P" was put on the instrument was not the stamp of
that bank.

19, 20. It is not our province to consider the weight
of the evidence; suffice it to say that it strongly sup-

ports the verdict. There was no error in denying the request to direct a verdict of not guilty. Exception is saved to that part of the charge of the court to the jury which is as follows:

"The indictment in this case charges that the check and the alleged indorsement and other matters appearing thereon to which your attention has already been called constitute a receipt. It is the claim of the state that that was used in being uttered to Mr. Cannon, the Referee in Bankruptcy.

"The indorsement on the check is a material matter. It is alleged that the indorsement is a forgery of the name of T. W. Harris and it would be necessary for the state to prove by evidence to your satisfaction beyond a reasonable doubt the fact of the falsity of the instrument, and that would include the indorsement of the name of T. W. Harris. It is the theory of the state that the name of T. W. Harris was forged on the check and that taken together it operated and was used as a receipt for money paid. * * "

21. The indorsement of the check, as we have already stated, functioned as the signature, and tendered to show that the check had passed through the hands of T. W. Harris. We think the trial court correctly charged the jury and fairly submitted the question to that tribunal. A careful examination of the instructions of the court to the jury does not disclose that the instruction quoted was out of harmony with the ruling of the court during the trial of the cause. At the appropriate time, the defendant filed a motion for a new trial based, among other things, upon errors of law occurring at the trial and excepted to by the defendant, and also newly discovered evidence, and assigns the overruling of the motion as error. All of the questions except that in relation to newly discovered evidence we think have been sufficiently detailed.

22. The Civil Code was so amended by the General Laws of Oregon, 1915, page 96, as to allow an appeal from an order setting aside a judgment and granting a new trial; but an order denying a motion for a new trial is not an appealable order. The amendment referred to does not apply to criminal actions: *State* v. *Pender,* 72 Or. 94, 109 (142 Pac. 615). The amendment of this Section 548, in 1915, did not change the statute in this respect. Hence, we cannot consider this motion. An examination of the affidavit for a new trial, however, leads us to believe that the court in no way abused its discretion in the matter.

23. Complaint is made that some of the account-books which were exhibits in the case were removed from the courtroom during the argument. It appears that they were returned and an offer was made by the counsel for the state to have them sent to the jury while they were deliberating, but objection being made by defendant's counsel they were not so disposed of. We find no exception taken in regard to the matter or any ruling made by the court. It does not appear that the defendant was in any way prejudiced.

Finding no error in the record, the judgment of the lower court must be affirmed.

AFFIRMED.

McBRIDE, C. J., and BENSON and BENNETT, JJ., concur.

Rehearing denied November 12, 1919.

PETITION FOR REHEARING.

(184 Pac. 848.)

*Messrs. Weatherford & Wyatt, Mr. Whitten Swafford* and *Mr. Willian P. Lord,* for the petition.

*Mr. Arthur Clarke* and *Mr. L. L. Ray, contra.*

Department 2.

BENSON, J.—24. With but one exception, the points upon which the correctness of the original opinion herein is challenged, were presented fully upon the former argument, and received our careful consideration, and our views thereon remain unchanged.

For the first time, our attention is now called to a provision found in Section 7 of Chapter 3 of the Bankruptcy Act of 1898, 30 U. S. Stats. 548, which after reciting various duties of the bankrupt, directs that he shall

"submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate; but no testimony given by him shall be offered in evidence against him in any criminal proceeding."

It is now urged that it was error to admit any evidence of what was said by the defendant in relation to the check in controversy, when upon the witness-stand before the referee in bankruptcy, by reason of the above statute. The obvious purpose of the statutory provision is to obtain from the bankrupt a full and frank history of his past business transactions, and at

the same time remove any justification for a refusal to answer in relation thereto, upon the ground that his evidence might tend to convict him of a crime. Our view in this respect is confirmed by the cases which are cited by appellant in his brief upon rehearing. It follows, therefore, that the statute does not and cannot apply to the language and acts of a bankrupt, who, in the course of his examination upon the witness-stand, commits a fresh crime, such as perjury, or the uttering of a forged instrument. Any other interpretation would make it folly to administer an oath to a bankrupt as a preliminary to his giving evidence in such a proceeding, and would, in effect, nullify the statute denouncing perjury. This conclusion is directly supported by *Glickstein* v. *United States,* 222 U. S. 139 (56 L. Ed. 128, 32 Sup. Ct. Rep. 71), and *Cameron* v. *United States,* 231 U. S. 710 (58 L. Ed. 448, 34 Sup. Ct. Rep. 244, see, also, Rose's U. S. Notes). The petition for rehearing is therefore denied.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.