Argued June 21, affirmed July 29, petition for rehearing denied August 24, petition for review allowed October 19, 1971

STATE OF OREGON, *Appellant, v.* CAROLYN ABBY NUSSBAUM, RALPH ERIC NUSSBAUM, JAMES CYRIL HOWE, PAUL JOSEPH GRATZ, KATHRYN ZERZAN, FRANCES MARGARET ROSS HARRIS, PAUL CULLEN MURPHY, JOHN MICHAEL DOLAN, JEFFREY PAUL FREED, JOSEPH RAY CHASE, ROBERT LOTHIAN, MARK ANTHONY VIERA, RUSSELL ROLLAND HUSTED, *Respondents.*

487 P2d 669

*James L. Carney*, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

*Stanton F. Long*, Eugene, argued the cause for respondents. With him on the brief were Johnson, Johnson & Harrang, Eugene, for Respondent Harris; Terence J. Hammons, Eugene, for Respondents Lothian, Viera, Chase and Husted; Robert L. Ackerman and Babcock & Ackerman, Springfield, for Respondents Nussbaum, Nussbaum, Howe, Gratz, Zerzan, Dolan, Freed and Murphy.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

Defendants Carolyn Nussbaum, Ralph Nussbaum, James Howe, Paul Gratz, Kathryn Zerzan, Frances Harris, Jeffrey Freed and Robert Lothian were accused in separate indictments of participating in a riot, during the course of which a Reserve Officer Training Corps building on the University of Oregon campus was burned.

The indictments read as follows:

"The said [name of individual defendant] on or about the 15th day of April, 1970, at approximately 6:00 p.m., in the county aforesaid, did wilfully participate in a riot by acting together

without authority of law with three or more persons who, with immediate power of execution, did threaten to use and did use force and violence and in the course of said riot, the Reserve Officers Training Corps public building located at or near 16th and Alder Streets on the University of Oregon campus, Eugene, Oregon, was wilfully, maliciously and wantonly set fire to and burned; contrary to statute and against the peace and dignity of the State of Oregon."

Defendants Paul Murphy, John Dolan, Joseph Chase, Mark Viera and Russell Husted were accused in separate indictments of participating in a riot, during the course of which one William Leroy Childers was unlawfully assaulted by being struck with an allegedly dangerous weapon, a glass cup.

The indictments read as follows:

"The said [name of individual defendant] on or about the 23rd day of April, 1970, in the county aforesaid, did wilfully participate in a riot by acting together without authority of law with three or more persons who, with immediate power of execution, did threaten to use and did use force and violence and in the course of said riot, William Leroy Childers was wilfully and unlawfully assaulted by being struck with a dangerous weapon, to wit, a glass cup; contrary to statute and against the peace and dignity of the State of Oregon."

Prior to entry of a plea, each defendant demurred on several grounds, including ORS 135.630(2),[1] and each demurrer was sustained by three circuit judges, sitting in banc, for the reason that the indictments neither alleged the names of co-rioters nor, alterna-

[1] ORS 135.630(2):
"It does not substantially conform to the requirements of ORS 132.510 to 132.570, 132.590, 132.610 to 132.690, 132.710 and 132.720."

tively, alleged their names to be unknown to the grand jury. The soundness of this ruling is the sole issue on appeal.

The state appeals pursuant to ORS 138.060(1), and requests this court for an order reinstating the indictments.

The state contends that failure to allege the names of the co-rioters or, in the alternative, to allege that their names are unknown, is at most a defect in form and not demurrable. The state also asserts that since the indictments were in the language of the statute. and that a conviction under such an indictment would be upheld, the trial judges were in error in sustaining the demurrers.

> "* * * The objects of an indictment are (1) to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the accused to avail himself of his conviction or acquittal thereof in the event that he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction. * * *" *State v. Smith,* 182 Or 497, 500, 188 P2d 998 (1948).

The statute on which the indictments are based reads as follows:

ORS 166.040:

> "(1) Any use of force or violence, or threat to use force or violence, if accompanied by immediate power of execution, by three or more persons acting together, and without authority of law, is riot."

■ ■ It is the general rule that if an indictment is based upon a statute it is sufficient if it follows the

wording thereof. However, if this general rule were applied in every situation and at every stage of the proceedings, ORS 135.630(2) would be rendered meaningless.

"It is obvious that an indictment may fail to comply with at least some of the requirements specified in ORS 136.630(2) and yet not be demurrable on the grounds stated in ORS 135.630(4) —(failure of facts stated to constitute a crime.) If every failure to comply with all of the provisions of law specified in ORS 135.630(2) made an indictment demurrable under ORS 135.630(4), there would have been no occasion to provide for any demurrer except on the basis of the latter subsection." *State v. Holland,* 202 Or 656, 666, 277 P2d 386 (1954). See e.g., *State v. Freeman,* 4 Or App 627, 481 P2d 638 (1971).

*State v. Smith,* supra, explains the function of the demurrer which tests the definiteness and certainty of an indictment:

"Section 11 of the bill of rights (Art. I, section 11, Oregon Constitution) provides that, in all criminal prosecutions, the accused shall have the right to demand the nature and cause of the accusation against him. The opportunity which the statute gives an accused to question the sufficiency of an indictment as to definiteness and certainty, by demurrer on the ground that it does not conform to the provisions of * * * [ORS 132.510 to 132.620, inclusive], meets the requirements of the bill of rights in this respect. If he fails to avail himself of that opportunity, he cannot complain afterwards. *People v. Bogdanoff,* supra (254 N.Y. 16, 171 N.E. 890, 69 A.L.R. 1378). The failure of the indictment to set forth the particular acts constituting the offense charged is waived by not making timely objection thereto, as, for example, by failing to demur upon that ground before pleading to the merits. * * *" 182 Or at 507-508.

There being no bill of particulars in criminal cases in Oregon, the demurrer provided by ORS 135.630(2) is a safeguard designed to allow a defendant, where necessary, to protect his right to be fully informed of the nature of the charge against him.

The state argues that ORS 132.590, which reads:

"No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in a matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits.",

requires that "to constitute valid grounds for demurrer, the alleged defect in the indictment must substantially prejudice defendant's case." Rather, the test pointed out in the statute is whether the defect *tends* to the prejudice of defendant's substantial rights. Furthermore, the time in the proceedings when the issue is raised is recognized as being of some importance. In *Howell v. State*, 1 Or 241, 245 (1859), the court, in discussing this statute, said:

"* * * The spirit and reasonable intendment of this provision of law is, that if an indictment is defective, or imperfect, in matter of form, *and trial, judgment, or other proceeding is had upon it* such proceeding will not be affected by reason of such defect or imperfection * * *." (Emphasis supplied.)

The above quotation suggests the distinction to be made between the certainty required in an indictment at the pleading stage and objections to the indictment later on as grounds for reversal of a conviction.

The state in its brief concedes that a summary of the case law from other states, which was relied

on by the trial court, presents the following state of the law:

> "Although the indictment must allege the names of the minimum number of co-rioters, or, in the alternative, allege their names to be unknown, the proof need show only that the defendant himself participated with the minimum number of co-rioters, even if their names were not alleged in the indictment, and even if their names were not alleged to be unknown, and, if alleged to be unknown, even if they were in fact known."

While admittedly not necessary to state a crime, the names of the minimum number of alleged co-rioters serves to more "fully apprise [defendant] of the nature and identity of the offense, which he is called to answer," *State v. O'Donald,* 12 SCL 532, 533, 10 Am Dec 691 (1822), and consistent with the search for truth which is basic to every judicial proceeding, furnishes the defendant with information which serves to make definite that with which he is charged.

■ In reviewing the Oregon cases in which riot was charged, the following cases disclose the indictment either alleged the identity of the alleged co-rioters or that their names were unknown, or both: *State v. Mizis,* 48 Or 165, 167, 85 P 611, 86 P 361 (1906) ; *State v. Allen,* 152 Or 422, 53 P2d 1054 (1936) ; *State v. Seeley,* 51 Or 131, 132, 94 P 37 (1908) ; *State v. Stephanus,* 53 Or 135, 136, 99 P 428 (1909). We agree with the order of the trial court which sustained the demurrer "on the grounds that the indictment fails to allege the names of the co-rioters, or in the alternative allege their names to be, to the Grand Jury, unknown." This court being of the opinion that the matter could be corrected, it

is authorized that the case be resubmitted to the grand jury.

Affirmed.

SCHWAB, C. J., specially concurring

I wish to note that I concur in the result in this case solely because I, contrary to my Brother Thornton, believe it is consistent with the majority view in *State v. House,* 5 Or App 519, 485 P2d 33, *rev'd and remanded* 260 Or 138, 489 P2d 381 (1971), from which I dissented.

If the majority of this court were ready to overrule *House* I would have joined in the dissent (though not necessarily for precisely the reasons there stated), thus making it the majority opinion in this case. However, to do so, and let *House* stand, would, in my opinion, create confusion as to sufficiency of indictments which would be far worse than requiring the district attorney in the case at hand to name the co-rioters. I am more certain that the district attorney has the information with which to do this than I am that the district attorney in the *House* case could meet the requirements of the majority opinion there.

THORNTON, J., dissenting.

I believe the indictments were sufficient. See *State v. Rood,* 234 Or 196, 202, 380 P2d 806, 808 (1963), where, after reviewing indictments in numerous prior Oregon cases which were held valid despite certain alleged omissions, the court said:

"Without further review of the authorities it will be noticed that our precedents announced in cases substantially similar to the present one do not require that the indictment name the individual who, similar to the purchaser of a lottery ticket, participates in the criminal act. It will also be

noticed that our precedents are in harmony with the trend of authority."

It is my view that the prevailing opinion errs by, in effect, engrafting on the anti-riot law an outmoded requirement of the common law, namely, that the state must allege and prove the names of the three or more persons with whom defendant is alleged to have engaged in the riot, or in the alternative, allege that the names of the co-rioters are unknown to the grand jury. The opinion reaches this result presumably on the authority of certain general language found in cases from Georgia, Arkansas and Maryland, which apparently follow the common law rule.

In 1864 our legislature, in order to escape from the technicalities of the common law, wisely adopted a new criminal code, together with a new system of code pleading in criminal as well as civil cases. Under this system it was to be, and still is, usually sufficient if an indictment or information follows the language of the statute on which it is based. *State v. Frasier,* 94 Or 90, 100, 180 P 521, 524, 184 P 848 (1919). This was the case here.

In my view, the prevailing opinion is an unfortunate step backward to the technicalities of outworn and outmoded common law pleading and procedure.

As stated in *State v. Smith,* 182 Or 497, 500-01, 188 P2d 998, 999 (1948), the purpose and object of an indictment is

"* * * (1) to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the accused to avail himself of his conviction or acquittal thereof in the event that he

should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction. [Citing cases.]"

The pertinent section of the Oregon Riot Law reads:

"(1) Any use of force or violence, or threat to use force or violence, if accompanied by immediate power of execution, by three or more persons acting together, and without authority of law, is riot.

"* * * * *." ORS 166.040(1).

Under the above statute, the gravamen of the offense is that defendant committed the unlawful act in concert with three other persons. This is all that the state must prove in this regard. The particular identities of these three other participants is not a matter which the state should be required to specify, since their co-participation rather than their identities is the only consideration.

An examination of the indictments in all of the riot cases which have reached our Supreme Court shows that in each case the defendants were jointly indicted and of course were all named in the indictment.

Here, as in *Cohen v. State,* infra, the district attorney, presumably for reasons of strategy, chose to indict eight co-rioters individually in eight separate indictments involving the alleged riot of April 15, and five co-rioters individually in five separate indictments on the alleged riot of April 23. Had the district attorney indicted them jointly in only two indictments, presumably this objection would not have been raised.

Does the fact that he proceeded against them individually by separate indictments change the rule of law applicable? I think not.

Experienced prosecutors, in drawing indictments, have a well founded aversion to including any unnecessary averments therein, fearing the danger of a possible variance between pleading and proof at trial. Here, if any mistaken identifications occurred through error of the arresting officers in identifying those involved, or the giving of false names by the arrested persons, the state's case might have been embarrassed thereby.

But even in a jurisdiction which follows the common law rule, the conviction would be valid so long as the proof showed participation by defendant and at least three others in a riot. *Cohen v. State,* 173 Md 216, 222, 195 A 532, 534 (1937).

Since the names of the co-rioters need not be proved to sustain a conviction for rioting, I think that the lower court erred in invalidating the indictments on this archaic technicality.

Lastly, I cannot agree with the reasoning of the separate concurring opinion of Schwab, C. J., that our recent holding in *State v. House,* 5 Or App 519, *rev'd and remanded* 260 Or 138, 489 P2d 381, 485 P2d 33 (1971), is controlling here.

In *House* the indictment for causing the death of a child failed to inform defendants of the time during the child's entire life span when the crime was alleged to have been committed, and used obscure terms in describing the offense which did not meet the requirement of ORS 132.540 "* * * to enable a person of common understanding to know what is intended * * *."

This is certainly not the case here.