## SMITH vs. WELCH et al.

### APPEAL FROM COUNTY COURT, DANE COUNTY.

Heard August 17, 1859.]　　　　　　　　[Decided December 14, 1859.

*Appeal—New Trial—Instructions—Replevin—Frauds.*

An appeal from an order refusing a new trial, upon the ground that the verdict was contrary to law and evidence. does not bring up for the review of the Supreme Court any error of the judge in refusing instructions asked for.

The question before the court, was fraud in C. in making a sale of goods, to S., and retaining possession until a creditor of C. had levied upon them; and the court refused to instruct the jury, that if they should find the sale to have been made in good faith, and to pay a *bona fide* debt, then the question of the possession of the goods did not enter into the case at all. Held, that such instruction was properly refused.

If S. suffers his goods to be so mingled with those of C. that an officer having a writ against the goods of C,, cannot distinguish them, but takes all the goods, then S. cannot maintain an action against the officer who has seized them, until notice, and demand and refusal.

This was an action brought against the defendants for taking from the plaintiff a quantity of goods, wares and merchandize, in a store at Mazomanie, in Dane county. The answer denied the possession of the plaintiff, and also his title; sets up as a defense, that at the time of the taking Barney Campbell was in possession of and the owner of the goods, ware and merchandize, and Campbell was then indebted to William M. Sinclair, and Austin Gunnison, merchants of the city of Milwaukee, for goods, &c., before that time sold and delivered to Campbell, and that Sinclair & Gunnison on the 9th day of June last, commenced a suit in the circuit court for the county of Dane, against Campbell, for the recovery of his indebtedness, and a warrant of attachment was issued and directed to the sheriff of the county of Dane, commanding him to attach the goods, &c., of the defendant therein, Barney Campbell, *to satisfy* said demand, and the attachment was placed in the hands of John D. Welch, who then was sheriff of the county of Dane, for execution; and Timo-

thy S. Chapman, who was then and still is a deputy sheriff of said county, received said process of attachment for execution, and that by virtue of such warrant of attachment, Chapman took the goods, wares and merchandize, mentioned in said complaint, and that by virtue thereof, and the execution issued in said action, in which judgment was afterwards, and before the commencement of this suit, duly rendered, he still detains said goods, as lawfully he may do.

The answer further averred fraud in the sale by Campbell to Smith, and that the sale was intended to hinder the creditors of Campbell.

The cause was tried by a jury, and considerable testimony given on both sides, relating to the possession of Campbell to the goods in question, from which it appears that the sale was made to the plaintiff on the 17th of May, 1858, by Campbell, and that Campbell remained in possession, as clerk of Smith, until the taking of the goods on the 9th of June, 1858. The goods were worth $839.

The defendants read their writs, and proved that the debts due Sinclair & Gunnison existed prior to the 17th of May, 1858. On that day he was at the store and Campbell was in possession, and selling goods as usual; that on the last day of May, Campbell said he was afraid his creditors would pitch on to his goods and break him up, but as fast as he could realize from the sale of the goods sold Mr. Smith, he would pay it over to his creditors, Sinclair & Gunnison among others. At the time of the conversation, Mr. Campbell was in the store selling goods. Smith's name was on the sign of the store; the family of Campbell lived in it.

To rebut this evidence the plaintiff proved that Campbell was indebted to him about $1,100 for money loaned and labor, and, at the time of the purchase, he endorsed the amount of the goods on the note. He was to pay $6 a month as rent for the store, and $35 for services as clerk. He did not know that Campbell was badly in debt at the time of the purchase. After the purchase from Campbell the plaintiff had bought $175 worth of other goods and put them into the store; and about $75 of these were in the store at the time of the levy.

Plaintiff's counsel requested the court to instruct the jury, that a man being in debt, has a right to pay such debt out of his property, although he might be embarrassed at the time; and if the debt to Mr. Smith was *bona fide*, the sale was good

Smith vs. Welch et al.

under the statute, and the plaintiff has a right to recover in this action, and that if the jury found the sale by Campbell to Smith to have been made in good faith, and to pay a *bona fide* debt, the question of the possession of the goods did not enter into the case at all.

The court refused to give this instruction, and the plaintiff excepted, and the court instructed the jury: That fraud was a question of fact, and that if they were satisfied that the plaintiff had given a good reason for leaving the property in the possession of Mr. Campbell, he had a right to recover.

The jury found a verdict for the defendant, and the plaintiff moved for a new trial, founded on the judge's minutes, on the ground that the verdict was contrary to law and evidence; which motion the court overruled, and the plaintiff has appealed to this court.

*Smith, Keyes & Gay,* for the appellant.

The court erred in refusing to give the instruction asked for by the plaintiff. The verdict should have been given for the amount of goods in the store which Smith had bought of others and put into the store.

*J. C. Hopkins,* for the respondent.

*By the Court,* PAINE, J.   This is an appeal from an order refusing a new trial. It appears from the case that the motion was made on the minutes of the judge, " upon the ground that the verdict was contrary to law and evidence." This does not properly bring up for review any error of the judge in refusing instructions asked. But as his refusal was urged as a ground for reversal by the appellant's counsel, we will say that we think the instruction, in the form in which it was asked, was properly refused. It was a question of fraud in the sale from Campbell to the plaintiff, Campbell having remained in the actual possession of the goods. The last part of the instruction is, that if the jury should find the sale " to have been made in good faith, and to pay a *bona fide* debt, the question of the possession of the goods did not enter into the case at all." It is very evident that the question of pos-

session had a very important bearing on the question, whether the sale *was* " made in good faith," and the jury must consider it, in determining that. But this instruction implies that they might pass on the question of good faith, independent of the question of possession ; and having, in this manner, come to the conclusion that the sale was *bona fide,* might leave the vendor's possession entirely out of view. This would clearly have been erroneous. If it was only meant to say that the real question for the jury was that of good faith in the sale, and that this might exist, notwithstanding Campbell's continuing possession, the instruction was not framed with sufficient accuracy to express that idea.

As to the question whether the verdict was against law and evidence, we think it very clear that the court below ought not to have disturbed the verdict upon the point of fraud in the sale; and still clearer, that this court ought not to reverse the order upon that ground. The only point upon which there is any room for doubt is, whether the verdict should be set aside because the evidence required it to be for the plaintiff to the extent of the goods purchased by him after the sale from Campbell, which were seized and sold on the attachment. The evidence upon this point is, that the plaintiff purchased about $175 worth of such goods, and Campbell thought about $75 worth remained in the store at the time of the seizure. But he also testifies that he was there in possession as the plaintiff's clerk, and that Chapman requested him to point out the goods so subsequently purchased by the plaintiff, and that he did not do it. Upon these facts, we think the case as to these $75 worth, comes within the rule that where one suffers his goods to be so mingled with those of another, that an officer having a writ against those of the other, cannot distinguish them, he cannot maintain an action against the officer who has seized them, until notice and a demand and refusal. *Bond vs. Ward,* 7 Mass,. 127 ; *Sawyer*

*vs. Merrill et al.*, 6 Pick., 430 ; *Shumway et al. vs. Rutter*, 8 Pick., 447 ; *Harding vs. Coburn*, 12 Met., 342.

In the case last cited, the court, while recognizing the rule, thought the facts were not such as to justify its application, and suggest that it should be applied with care. This is perhaps true, but even with this caution in view, we think this case comes fairly within it. In the first place, the party attaching demanded of the plaintiff's agent that he should designate these goods, which he neglected to do. And, furthermore, the jury found that the sale from Campbell to the plaintiff was fraudulent, which brings it within the remark of the court in *Snumway et al. vs. Rutter*, as to a fraudulent collusion between the owner of such goods and the debtor, for the purpose of preventing an attachment.

The order appealed from is affirmed, with costs.

