Goldsworthy vs. The Town of Linden.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 43 N. W. Rep. 826.— REP.

GOLDSWORTHY, Respondent, vs. THE TOWN OF LINDEN, Appellant.

*October 18 — November 5, 1889.*

*(1) Highways: Injury from defect: Service of notice. (2) Notice to overseer. (3, 4) Instructions to jury: Immaterial error: Expression of opinion. (5, 6) New trial: Newly discovered evidence, when cumulative: Discretion.*

1. In an action for injuries sustained by reason of a defect in a highway the plaintiff testified that he " served a copy of [one] notice on the town clerk, September 28, 1886, and a copy of [another

Goldsworthy vs. The Town of Linden.

notice] on the chairman of the town board." *Held* that, in the absence of other evidence as to the time of the service of the latter notice, it might fairly be inferred that both were served on the same day, especially as the chairman testified that soon after the accident he went to the place and examined it, but was silent as to when the notice was served upon him.

2. Notice to the overseer of highways of a defect in a highway in his district is notice to the town.

3. An error in charging the jury as to matters to be considered by them in case they found a certain state of facts to have existed, is rendered immaterial by a finding that such state of facts did not exist.

4. The statement in the charge, that the testimony relied upon to establish a certain fact is *mainly* the testimony of two witnesses named, is *held* not to be an improper or prejudicial expression of opinion by the court, where the other evidence, if any, was circumstantial.

5. At the trial there was evidence of admissions by the plaintiff by way of acquiescence in statements made by his wife, but the jury might have found that he did not hear such statements or did not realize their import. *Held*, that newly discovered evidence tending to prove other and distinct admissions of the same fact at different times was not merely cumulative.

6. The defendant being free from laches, the newly discovered evidence being not merely cumulative and being verified by apparently credible witnesses, pertinent to the material issue, and such as might have changed the result of the trial, it is *held* that it was error not to grant a new trial upon reasonable terms.

APPEAL from the Circuit Court for *Iowa* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action for personal injuries to the plaintiff and his wagon and harness, while traveling upon the highway described, on the evening of August 1, 1886, alleged to have occurred by reason of and on account of the insufficiency, unsafe condition, and want of repair of said highway at the point of said accident, without any negligence or fault on the part of the plaintiff, with the usual allegations in such cases. The answer consists of denials and admissions, and alleges contributory negligence on the part of the plaintiff.

At the close of the trial the jury returned a special verdict to the effect (1) that the highway, at the time and place of the accident, was insufficient and out of repair; (2) that the plaintiff was injured by reason of such insufficiency and want of repair; (3) that at the time of such accident the plaintiff was exercising ordinary care in traveling along the highway; (4) that at the time of the accident the horse he was driving was under the control of the plaintiff; (5) that the overseer of the highway in the district where the accident took place did know of said defect or insufficiency long enough before the time of the accident to have, in the exercise of ordinary care, filled the ditch, or to have placed barriers to protect travelers from going into it; (6) that the notice required by statute to be given to the town board of an injury happening upon a highway was given to the board of this town as to this injury, and the plaintiff's claim was presented for allowance by the board as the statute requires, and the same was disallowed, and this action was not commenced until after the time had expired within which the statute says it shall not be commenced; (7) that the plaintiff is entitled to recover from the defendant town, on account of injuries he received by said accident, $700.

Thereupon, and on October 5, 1888, and before the entry of judgment herein, the defendant moved the court to set aside said verdict and grant a new trial for several reasons therein specifically stated, but which motion was denied and overruled by the court, October 6, 1888, and judgment ordered thereon. After judgment was entered upon said verdict, the defendant moved the court to set aside and vacate said judgment and verdict, and grant a new trial therein, on the ground of newly discovered evidence, stated in the affidavits constituting a part of the·motion papers. Said motion came on to be heard February 14, 1889, and the same was denied, with costs, and the order entered accordingly. From said judgment, and also from said last-mentioned order, the defendant appeals.

For the appellant there was a brief by *Orton & Osborn*, and oral argument by *P. A. Orton.*

For the respondent there was a brief by *Spensley & McIlhon* and *J. M. Smith*, and oral argument by *Calvert Spensley.* To the point that the newly discovered evidence was strictly cumulative, they cited *Audis v. Richie*, 21 N. E. Rep. (Ind.), 1111; *Gans v. Harmison*, 44 Wis. 324; *Conradt v. Sixbee*, 21 id. 383.

CASSODAY, J. The plaintiff, with his wife and two children, in a light wagon drawn by one horse, was, at the time of the accident, traveling upon the highway leading from the Welsh settlement to Mineral Point. It appears from the evidence that as he approached the ditch at which he was injured, and when 248 feet from it, he came to the top of a hill which descended for about 200 feet towards the place of the accident, and from that point to the ditch, a distance of about forty-eight feet, the road was nearly level. For that distance of 200 feet the traveled track appears to have been substantially on the line with the right of way, except that the lower end of it turned slightly to the plaintiff's right as he was driving, and continued to turn in that direction until within a short distance from the ditch, when it began to turn quite abruptly the other way, and so continued for some distance beyond, until the road appears to have been at right angles with the road at the top of the hill. The ditch was evidently caused by the water running across the road, and ran at nearly right angles from it, on the plaintiff's right as he came down the hill. There is evidence tending to show that it commenced some two or three feet from the traveled track, and at that point was from one to two feet deep, and widened and deepened rapidly, so that at a distance of from six to ten feet from the main traveled track it was from three to five feet wide, and from two to four feet deep, and was so overhung with

weeds and grass that the ditch itself could hardly be seen by travelers in the day-time, especially when coming down the hill. It appears to have been in the neighborhood of 8 o'clock in the evening of August 1, 1886, when the plaintiff, driving down the hill, got outside of the traveled track on his right with all the wheels of his wagon, and so drove into the ditch and was injured.

We must hold, upon principles too well established in this court to require the citation of authority, that the evidence is sufficient to sustain the findings of the jury to the effect that at the time and place of the accident the highway was insufficient and out of repair, and that the plaintiff was injured by reason thereof. The question whether the ditch was so connected with the traveled portion of the highway as to endanger the safety of those traveling thereon was, as we think, upon all the evidence, one of fact for the jury. Nor can we hold, as a matter of law, that the plaintiff was guilty of contributory negligence.

It is claimed that there is no proof in the record of the service upon a supervisor of the town of the notice in writing, signed by the plaintiff, "stating the place where such damage occurred, and describing generally the insufficiency or want of repair which occasioned it, and that satisfaction therefor" was claimed of such town, within the time required by sec. 1339, R. S. The plaintiff testified upon the trial as follows: "I served a copy of this notice on the town clerk of the town of *Linden*, September 28, 1886, *and a copy of this* on Mr. Coates, chairman of the town board of Linden. [Notices offered in evidence, hereto attached, marked 'Exhibits A' and 'B.']" The notice thus put in evidence and marked "Exhibit A" was addressed "to the supervisors and clerk of the town of *Linden*, in said county," and it is conceded that it was served on the town clerk, September 28, 1886, as stated in the testimony quoted. But it is claimed that while this testimony shows that such Ex-

hibit B was served " on Mr. Coates, chairman of the town,"
yet that it does not show *when* it was so served.   It may
be fairly inferred therefrom, however, that it was served
at the same time as Exhibit A, and that was within the
time required by the section of the statute cited.   Espe-
cially should such inference be indulged since Mr. Coates,
the chairman upon whom it was served, was examined as
a witness upon the trial, and stated, in effect, that he went
to the place of the accident, and examined it, some three
weeks after the injury, but was silent respecting the time
when the notice was served upon him.   Had it been served
too late, it would have been a very easy matter for him to
have so stated.   It is not seriously contended that that
notice did not describe the place of the injury sufficiently
to satisfy the requirements of the section cited.   We must
therefore hold that there is evidence to sustain the sixth
finding of the jury.

Exception is taken because the court charged the jury
that "it is claimed in this case that the horse at the time
of the accident was running away or was not under the
control of the plaintiff.   If you find, from the evidence,
*that such was the case, and* you find that if the horse had
not been running away, or if it had been under the control
of the plaintiff, *this accident might not have happened*, the
plaintiff cannot recover."   Much discussion has been in-
dulged by counsel as to the precise meaning of this portion
of the charge.   The ambiguity, if any, seems to arise from
the repeated combined use of affirmative and negative ex-
pressions.   The charge seems to have been to the effect
that if the jury found, from the evidence, that at the time
of the accident the horse was running away or not under
the control of the plaintiff, and that otherwise the accident
might not have happened, then the plaintiff could not re-
cover.   It is said that this charge entirely ignores the lia-

bility of the town in case the fright of the horse had originally been caused by a defect in the highway. But the learned counsel for the defendant concedes that this error, if it be an error, was not prejudicial to the defendant. He claims, however, that the words, "this accident might not have happened," in the passage quoted, "introduces an element as essential to the non-liability of the defendant, which does not exist in the law." Accordingly, he requested an instruction that, "if the jury believe, from the evidence, that the horse the plaintiff was driving became uncontrollable before the accident, and that such condition did not proceed from any neglect on the part of the town or its officers, and was not under control of the plaintiff at the time of the accident, *then*, though there may have been no fault in that regard on the part of the plaintiff, the plaintiff cannot recover against the town." It will be observed that not only the charge thus given, but the instruction thus requested, is based upon the theory that the jury should find that *at the time* of the accident the *horse was not under the control of the plaintiff*. The jury, however, found that at the time of the accident the horse *was* under the control of the plaintiff. This finding seems to eliminate from the case the supposed error, if one in fact existed. To use the language of the same counsel, the charge given "does not stop with the facts of the case concerning the manageableness of the horse, *if the jury find that question in favor of the defendant*, but requires, *in that event*, that the jury enter upon a speculation as to what might have occurred had the horse not become unmanageable." Since the jury did *not* "find that question in favor of the defendant," but in favor of the plaintiff, it is manifest that the "event" never occurred which is said to have required them to "enter upon a speculation" of the character indicated. We must hold that the error in

the charge, if any, as eliminated by the finding, was not prejudicial to the defendant, and must therefore be disregarded.

It is claimed that the finding of the jury to the effect that the overseer of highways had knowledge of the defect long enough before the accident to have remedied the same and thus have prevented the injury, was insufficient to charge the town; in other words, that the notice of a defect in a highway, in order to charge the town with injury therefrom, must be brought home to one of the supervisors, instead of the overseer of the district. Overseers are charged with the duty of repairing and keeping in good order the highways within their respective districts, and to remove all obstructions therefrom, and to execute all lawful orders of the supervisors. Sec. 1232, R. S. True, as officers, they are subordinate in rank to the supervisors of the town; nevertheless we must hold that notice to the overseer of a defect of a highway in his district is, in legal effect, a notice to the town.

Exception is taken because the court charged that "the testimony relied upon to establish such runaway or such uncontrollableness is *mainly* the testimony of Mr. and Mrs. Lawinger as to what Mrs. Lawinger heard Mrs. Goldsworthy say upon the night of the accident, while the plaintiff was in the same room, without contradiction by the plaintiff." We cannot think that such expression of opinion respecting the evidence, by the use of the word " mainly " in this portion of the charge, was unjust or prejudicial to the defendant; especially since the other testimony, if any, was circumstantial. Trial courts must be permitted to exercise some latitude in such expressions of opinion. *Massuere v. Dickens,* 70 Wis. 91. After stating the circumstances under which statements of the wife in the presence of the plaintiff would tend to constitute an admission on his part, the court charged the jury to the effect that if the

plaintiff did not hear such statements, or was in such a condition as not to fully realize their import, or as not to be able to contradict them, then they did not constitute an admission on his part. We think, under all the evidence, the question involved therein was one of fact for the jury, and thereby properly submitted.

Error is assigned because the court refused to set aside the judgment and verdict, and grant a new trial, on the ground of newly discovered evidence. It appears from the affidavits of George Morgan, in effect, that he and the plaintiff were together on the farm of John P. Jones, in the town of Mifflin, some days after the accident; that while then and there in conversation about the accident the plaintiff told him (Morgan) that the mare "went down the hill on a hog-trot" on that occasion; that he could not keep the mare in the highway; that she would keep going toward the fence; that she ran into a ditch, where he and his wife were thrown out, in spite of his best efforts; that he attributed the accident to the fact that he was unable to keep the mare in the track or highway; that the harness on the mare that day was a miserable, patched-up affair, and the wagon was very poor and rickety. It also appears from the affidavit of Francis Little, in effect, that soon after the accident he met the plaintiff, with a bandage around his head, in the drugstore of John H. Vivian, in Mineral Point; that he then and there asked him what was the matter; that the plaintiff then and there replied, "I had a bad runaway in the Welsh settlement," but made no complaint "about the highway or its condition." It also appears from the affidavit of Robert Hughes, in effect, that after the accident he met the plaintiff and his sister in a hotel named, in Mineral Point; that he then and there had conversation with them about the accident; that the plaintiff then and there told him "that he had had a terrible bad runaway in the Welsh settlement;" that the sister then and there, and

in the presence and hearing of the plaintiff, told him " that the horse her brother was driving ran away down the hill and into a ditch close to Podley's old place." These several statements are denied in an affidavit of the plaintiff. His sister also denies the statements so made by Hughes. Other affidavits tend to show that the wagon and harness were, at the time of the accident, in good condition. Such conflict, however, cannot be determined upon affidavits. For the purpose of the motion, such newly discovered evidence must be regarded as true. Its pertinency and importance upon the issue tried cannot be doubted.

It appears from the affidavits of the several supervisors of the town that such new evidence was not discovered until on and subsequently to November 3, 1888, notwithstanding soon after the accident, and at divers times before the trial, pretty thorough investigation and inquiries were made for the purpose of ascertaining all evidence supposed to exist, and pertinent to the defense.

The only remaining question involved is whether such new evidence is of such a character as to require the court, in the exercise of a sound discretion, to grant a new trial. On the one hand, it is claimed that such new evidence is uncertain, contradictory, and cumulative; on the other hand, it is claimed that it is new, and not cumulative. No evidence was given or attempted to be given upon the trial of any admissions made by the plaintiff, except by way of acquiescing in statements made by his wife. As to such statements, as already indicated, it was competent for the jury, under the charge, to find, either that the plaintiff, by reason of his condition at the time it is claimed the statements were made, did not hear them, or, if he did, that by reason of such condition he did not fully realize their import or was not able to contradict them. The finding of the jury, therefore, is to the effect that the plaintiff made no admission respecting the uncontrollability of his horse.

This court has held that "testimony is not merely cumulative when it tends to prove a distinct fact not testified to at the trial, although other evidence may have been introduced by the moving party tending to support the same ground of claim or defense to which such fact is pertinent." *Wilson v. Plank*, 41 Wis. 94. In the opinion in that case Mr. Justice LYON has, upon authority and reason, fully discussed the question as to when such newly discovered evidence is cumulative, and when not. The rule thus laid down has frequently been sanctioned in subsequent cases. *Finch v. Phillips*, 41 Wis. 393–395; *Hinton v. C. C. R. Co.* 65 Wis. 334; *Krueger v. Merrill*, 66 Wis. 31. The discretion of the trial court in such matters is a legal discretion, and is very much the same in principle as opening ordinary defaults. Where the moving party is free from laches, and the newly discovered evidence is of the character indicated, verified by apparently credible witnesses, pertinent to the material issue in the case, and such as might have changed the result of the trial, there would seem to be no injustice in opening the case and granting a new trial upon reasonable terms. *Whereatt v. Ellis*, 70 Wis. 215; *Cleveland v. Hopkins*, 55 Wis. 387. Upon the authority of the cases cited, we must hold that it was error not to grant a new trial upon such terms.

*By the Court.*— The judgment of the circuit court and the order refusing to grant a new trial are each reversed, and the cause is remanded with direction to grant a new trial upon condition of the payment, within a time to be named, of the plaintiff's taxable costs in the trial court, and for further proceedings according to law.