Argued September 23, reversed and remanded October 19, rehearing denied December 14, 1920.

# STATE v. EVANS.

(192 Pac. 1062; 193 Pac. 927.)

**Jury—Provision of Constitution, Forbidding New Trial, not Applicable to Criminal Case.**

1. Article VII, Section 3, of the Constitution, as amended (see Laws 1911, p. 7), declaring that in actions at law where the value in controversy shall exceed $20, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court unless the court can say there is no evidence to support the verdict, does not apply to a criminal case, but the pre-existing procedure should be followed pursuant to Section 2.

---

What is cumulative evidence within rule excluding it when offered as newly discovered evidence in support of motion for new trial, see note in Ann. Cas. 1913D, 157.

Power of appellate court to grant new trial on ground of newly discovered evidence, see note in 19 Ann. Cas. 508.

Criminal Law—Essentials to New Trial on Newly Discovered Evidence.

2. Newly discovered evidence to justify a new trial must be such as would probably change the result, it must have been discovered since the trial, it must be such as could not have been discovered before the trial by the exercise of due diligence, it must be material, it must not be cumulative merely, and it must not be merely impeaching.

Criminal Law—Defendant's Knowledge of Occurrence will not Prevent New Trial, Where He Did not Know of Evidence.

3. That defendant knew of the occurrences, newly discovered evidence of which he relied on for new trial is no ground for denying the motion; knowledge of the existence of a fact and of the evidence to prove it being entirely different.

Criminal Law—Newly Discovered Evidence Held not "Cumulative Evidence," and to Justify New Trial.

4. In a prosecution for robbery, where defendant relied on alibi, newly discovered evidence of a traveler, tending to show that defendant was not at the place of crime on the date specified, as well as other newly discovered evidence, showing defendant's whereabouts in a different place by reason of the fact that on the day of the crime he motored with one witness and did work for other witnesses, etc., is not cumulative within Section 700, L. O. L., defining cumulative evidence as additional evidence of the same character to the same point, and warrants new trial, even though defendant must have known of his whereabouts and might have testified thereto, since, even if he did, there is a great difference between the testimony of an interested witness and that of a disinterested witness.

Criminal Law—Defendant Held to have Shown Diligence so as to be Entitled to New Trial on the Ground of Newly Discovered Evidence.

5. Where defendant, who relied on alibi, inquired of his employers concerning evidence of his whereabouts at the time of the alleged offense, and they disclaimed knowledge of anything in his benefit, evidence of records showing defendant's whereabouts, discovered after the employers' recollections were refreshed by the investigation of another, is ground for new trial, despite the contention defendant did not exercise diligence.

Criminal Law—Where Trial Court Erroneously Determined It had No Discretion to Grant New Trial, Denial will not be Upheld.

6. Where the trial court, under a mistaken view of the precedents, erroneously determined that, under Article VII, Section 3, of the Constitution, as amended (see Laws 1911, p. 7), it had no discretion to grant a new trial on the ground of newly discovered evidence, the denial cannot be upheld on the theory that the discretion of the trial court will not be reviewed.

Criminal Law—Evidence of Prior Identification of Defendant Inadmissible as Self-serving Declaration.

7. In a prosecution for robbery, evidence of the sheriff that the prosecuting witness identified defendant in jail was inadmissible, being in the nature of a self-serving declaration.

Criminal Law—Permission to Introduce in Rebuttal Evidence in Chief Should not be Arbitrarily Granted.

8. Under Section 132, L. O. L., providing that after plaintiff has introduced evidence on his part and has concluded, and defendant has done the same, the parties may then respectively introduce rebutting evidence only, unless the court permits them to introduce evidence upon the original cause of action, permission to the state to introduce on the rebuttal evidence in chief should not be arbitrarily granted out of hand.

Criminal Law—Evidence as to Identification of Prosecuting Witness not Rebuttal.

9. In a criminal prosecution, where the prosecuting witness testified to his identification of defendant and defendant to his protestations of innocence, etc., testimony by the sheriff as to the identification was inadmissible as rebuttal, and should on objection be excluded.

Robbery—Evidence of Defendant's Protestation of Innocence Inadmissible as Showing Identification.

10. While, under Section 727, L. O. L., declaring that evidence may be given of a declaration or act of another in the presence and within the observation of a party, and his conduct in relation thereto, the state might introduce evidence of defendant's strong protestation of innocence when the prosecuting witness identified him as a robber, it would clearly be immaterial to introduce it as showing identification of defendant by the prosecuting witness.

Criminal Law—Weight of Evidence for Jury.

11. The weight of the evidence in a criminal prosecution is exclusively for the jury.

ON PETITION FOR REHEARING.

Criminal Law—Order Denying Motion for New Trial Only Reviewable on Appeal from Judgment.

12. An order denying motion for a new trial is not appealable, and, if reviewable at all, can only be reviewed by an appeal from the judgment against which the motion is directed.

Criminal Law—Denial of Motion for New Trial, Based on Insufficiency of Evidence, not Assignable as Error.

13. The denial of a motion for a new trial cannot be assigned as error, and will not be reviewed on appeal, where the motion is based on an alleged insufficiency of the evidence.

Criminal Law—Sufficiency of Evidence Reviewed Where Motion for Nonsuit or Directed Verdict is Made.

14. Accused is always afforded an opportunity to question the sufficiency of the evidence by moving for a nonsuit at the close of the state's case in chief or by moving for a directed verdict when both parties have rested and in that manner preserve the record so that upon appeal the question of the sufficiency of evidence may be reviewed.

Criminal Law—Denial of Motion for New Trial on Ground of Newly
    Discovered Evidence may be Assigned as Error.

15. An order, denying a motion for a new trial, is assignable
as error, and will be reviewed on appeal, if the motion is based
upon newly discovered evidence.

Criminal Law—Denial of Motion for New Trial for Newly Dis-
    covered Evidence Disturbed Only When There is Abuse of Dis-
    cretion.

16. The ruling of a trial court denying motion for new trial upon
the ground of newly discovered evidence will not be disturbed
unless there has been an abuse of discretion, but an accused is
entitled to the exercise of a judicial discretion by the trial judge.

From Jackson: Frank M. Calkins, Judge.

Department 1.

The defendant was convicted of the crime of
assault and robbery being armed with a dangerous
weapon, and has appealed.

Reversed and Remanded.

For appellant there was a brief and an oral argu-
ment by *Mr. Gus Newbury.*

For the State there was a brief and an oral argu-
ment by *Mr. G. M. Roberts,* District Attorney.

BURNETT, J.—In substance, the theory of the
state is as follows: On Saturday, September 13, 1919,
about 5:40 o'clock in the afternoon, the prosecuting
witness, White, was sitting in his taxicab near the
Grants Pass Hotel at Grants Pass, Oregon. At that
hour the defendant engaged the owner of the vehicle
to convey him and his wife across Rogue River.
They went at once to the railway station, where they
took on board the defendant's wife and their baggage,
consisting of a grip and satchel, and proceeded on
their way, White seated on the front seat, driving,
and the defendant and his wife on the back seat.
After having crossed the river and arrived at what is

known as Savage Rapids, the defendant presented a pistol at the driver's head, compelled him to get out and go with the defendant into the brush, where the latter robbed him of $27 in money, forced him to get into the car and drive to a point in the hills near Jacksonville, in Jackson County, where the defendant took White into the brush, bound and gagged him, got into the car, and drove rapidly away with his wife. Arriving at Jacksonville, the defendant bought some gasoline in the presence of several men, disappeared, and was not heard of until he was arrested at Klamath Falls some time in October following. He was brought back to Medford, and as the result of an inquiry in the office of the district attorney he was discharged for want of sufficient evidence, and returned to Klamath Falls. He was indicted by the grand jury of Jackson County, and arrested in November. This indictment was dismissed, and a new one afterwards returned upon which he was tried.

The state produced the evidence of several witnesses, who testified to seeing the defendant and his wife loitering about the railway station at Grants Pass during the afternoon of September 13th; also a former acquaintance of the defendant's father, whom he met at Grants Pass, and who claims that this occurred on September 13th.

On his part the defendant admits that he and his wife were at Grants Pass at the station during part of the day on September 9th, four days before the date of the alleged crime, and that he met his father's acquaintance on the 9th, but contends that he left Grants Pass on train No. 53, going to Medford on the afternoon of the 9th, and was never again at Grants Pass. He had sought work at his trade as an auto-

mobile mechanic at Grants Pass, but without success. He secured employment at Medford, and claims that he was engaged at the latter place continuously from about September 10th to 17th.

Sundry assignments of error are presented by the abstract, but the one principally relied upon is that of the court in refusing to grant a new trial on the ground of newly discovered evidence. Unquestionably, there was sufficient evidence to justify the verdict, for the prosecuting witness was very positive in his identification of the defendant as the man who robbed him. The defendant had the benefit of the testimony of Dewey Jones, who gave evidence to the effect that on September 9th he boarded the train out of Grants Pass en route to Medford in company with the defendant, and rode with him as far as the latter place, where the defendant and his wife left the train; also that of the witness Currie, who was bookkeeper for the Hines & Snyder garage at Medford, and who testified to the fact of paying the defendant part of his wages as an employee of that concern on September 13th, in the shape of two small checks which had been paid in by customers of the establishment. It was admitted by the prosecution also that the defendant registered at the Hotel Holland at Medford on September 9th. Still further, there was the testimony of the witness Kribs, a grocer, and Kizer, his clerk, to the effect that about half-past 5 in the afternoon of the 13th the defendant purchased some groceries at Medford, and Kribs assisted him in carrying them to a house he had rented in that town.

As newly discovered evidence, the defendant offers the testimony of Milom Jones, to the effect that he left Grants Pass on a train No. 54, going north from

Grants Pass, about 6 o'clock in the evening of September 13th; that during the course of that afternoon he was at the railway station several times, endeavoring to engage accommodations on board that train, but that he did not see the defendant or his wife about there at all, although he had the opportunity to see them if they had been there. The defendant also propounds the testimony of W. E. Thomas, to the effect that on Saturday evening, September 13th, between half-past 6 and 7 o'clock he was riding with the defendant and the witness' father and mother at Medford. Again, it is proposed by the motion for a new trial to offer the evidence of Sam L. Sandry and Jerome Hilbert, to the effect that since the trial they have examined into their business records of dealings with the Hines & Snyder garage at Medford, and that the former is prepared to testify that on September 13th the defendant was working at the garage and did some work on a certain Chalmers car belonging to the Blue Ledge Mining Company. The testimony of I. A. Snyder, as shown by his affidavit in support of the motion for a new trial, is to the effect that between the time of the defendant's arrest and the trial, the latter had inquired of him if there was any evidence within the affiant's knowledge, aside from the records of the garage, that would show that at the time of the commission of the crime the defendant was at Medford, and he was unable to give him any information, but since then he has discovered, as the result of investigation made by the affiant Sandry, that there was a transaction in which the defendant was concerned, about the purchase of a vacuum tank from another business house at Medford for the affiant's firm, that would show conclusively that he was at Medford at the time the crime was committed. There is a great wealth of affidavits,

along similar lines, of different witnesses who are prepared to give detailed circumstances tending to show that the defendant was at Medford, as he claims, when the crime was committed, but which are too numerous to be noticed further in this opinion.

1. The opinion of the trial judge in denying the motion for new trial is set out in the brief of the district attorney, and discloses the ruling theory upon which the motion was denied, to the effect that since the adoption of the amended form of Article VII of the state Constitution (see Laws 1911, p. 7), the granting of a new trial is not discretionary with the trial court. The opinion cites the cases of *Webb* v. *Isensee,* 85 Or. 148 (166 Pac. 544), and *Archambeau* v. *Edmunson,* 87 Or. 476 (171 Pac. 186). These were both civil cases, the former an action for slander and the latter for damages for the alleged breach of an agreement. Both of these opinions were written by the late Justice MOORE. In the Archambeau case he used this language:

"The rule formerly obtained in Oregon that the granting or denial of a motion for a new trial was a matter resting within the discretion of the trial court, whose action upon the application would not be disturbed upon appeal, except in case of a manifest abuse of what should have been an exercise of sound judgment. Article VII, Section 3, of the organic law of this state, as amended, declares: 'In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict': Gen. Laws Or. 1911, p. 7. Since that amendment became operative it has been held that the granting of a new trial was not a matter of discretion; that an order for the rehearing of a cause could not be sanctioned except when the court had com-

mitted some error, which if properly excepted to or seasonably called to the attention of the court and the motion denied would have been sufficient cause for a reversal of the judgment if it had been brought up for review; and that under such circumstances the trial court upon motion or *sua sponte* possessed adequate power, and was authorized within the prescribed time, to correct the error which it had committed by granting a new trial''—citing authorities.

As applied to the case in hand, we note that Section 2 of the constitutional amendment reads thus:

''The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. * * ''

We find in Section 3 that:

''In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. Until otherwise provided by law, upon appeal of any case to the Supreme Court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the Supreme Court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as

decrees are now entered in equity cases on appeal to the Supreme Court. * * "

It will be observed in the first place that there has been no change in the judicial system of the state affecting the present case, except that which may be found in the amendment itself. That clause of the third section upon which the *Webb* v. *Isensee* case and that of *Archambeau* v. *Edmunson* were based, relates to actions at law "where the value in controversy shall exceed twenty dollars." A criminal case, although an action at law as defined in *State* v. *Carr*, 6 Or. 133, is not one where the value in controversy exceeds $20. Indeed, no value can be placed upon a man's liberty. The cases referred to, therefore, are not precedents governing the consideration of a criminal charge. The design of the clause referred to was to take from the trial court the authority to set aside a verdict on the ground that the preponderance of evidence was against the decision of the jury, as taught in such cases as *Serles* v. *Serles*, 35 Or. 289 (57 Pac. 634). Under the former *régime*, as illustrated by that case, it was permissible to set aside the verdict of the jury when in the judgment of the court it was against the great preponderance of the evidence. This is no longer the rule under the Constitution, in actions to which the amended form of the organic act is applicable.

2. We feel at liberty, therefore, under sanction of Section 2 of the constitutional amendment, to proceed under the judicial system as it formerly existed to inquire if the motion for a new trial should have been sustained. It is said in *State* v. *Hill*, 39 Or. 90 (65 Pac. 518), that:

"Newly discovered evidence which will justify a court in setting aside a verdict and granting a new

trial must fulfill the following requirements: '(1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely impeaching or contradicting the former evidence.' "

3-5. The crux of the present situation is to determine whether or not the proposed testimony is "merely cumulative." In our judgment, the showing on the other points is amply sufficient. If believed by the jury which shall re-examine the question of fact, it would seem that the testimony set forth in the affidavits supporting the motion for a new trial would so effectually establish the alibi as to convince the most doubting that the result of the new trial would be different.

It is argued that the defendant was aware of all of the occurrences set forth in the affidavits. But it is plain from the showing that, although he thus had knowledge of the different transactions detailed, he was not aware of the evidence available to prove them. There is a palpable distinction between the existence of a fact and the evidence to prove it to others. That the proposed testimony is clearly material to the issue goes without saying. The controversy centers around the question of whether the evidence is "merely" cumulative. An illustration of this phrase is found in *State* v. *Hill*. The defendant was there accused of the crime of stealing a mare. His defense was that on a certain occasion in company with his two brothers he met a man who was in possession of the mare in question, and traded a gray mare for her. His brothers testified to this occur-

rence in his defense. His motion for a new trial was based upon affidavits showing that he had at length, since the hearing, discovered the whereabouts of the man with whom he had traded, who would testify that they exchanged horses at that time and place, without any further circumstance or detail of the occurrence. The two brothers of the defendant had already testified to that identical transaction, and the testimony of the proposed witness offered no more than what had already been narrated in detail.

The best writers on the subject of cumulative evidence find it extremely difficult to apply the definition in practice. By Section 700, L. O. L., we learn that "cumulative evidence is additional evidence of the same character to the same point." A writer in the note to *Spencer* v. *State,* 69 Tex. Cr. Rep. 92 (153 S. W. 858, 46 L. R. A. (N. S.) 903), after discussing the question says:

"It would therefore appear that the rule that a new trial will not be granted to permit the introduction of cumulative evidence has more sound than meaning; the real test being that applied to all newly discovered evidence, whether cumulative or not, namely, the probability of a different verdict; and that the only significance of the cumulative character of evidence lies in the improbability that evidence of the same character as that which a jury has by its verdict already rejected would lead to a different result."

Our statute, Section 174, L. O. L., grants a new trial for "newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial." Commenting on a similar statute of the State of Washington, Mr. Justice DUNBAR, in *State* v.

98 Or.—15

*Stowe,* 3 Wash. 206 (28 Pac. 337, 14 L. R. A. 609), reviewed the difficulties attending the application of the definition of cumulative evidence to a concrete case and said:

"But, after all is said and done, any attempt to lay down rules of construction for this section is simply an enlargement in words of the idea so compactly expressed in the statute. If it is material testimony, it can only be material because it would tend to strengthen the applicant's case, and probably lead to different results; and if it is material, and applicant could not have discovered it with reasonable diligence, common justice demands that he should have the benefit of it."

In a sense, all evidence is cumulative that tends to establish the same general result. It may be accumulated or piled together on one side of the scale of justice, whether it be evidence directly to the same identical point, as if one witness would, parrotlike, repeat the story of another, or whether it relates to totally different circumstances; yet it would not all be cumulative within the restrictive meaning of the statute. *State* v. *Hill,* 39 Or. 90 (65 Pac. 518), illustrates the kind where one witness would repeat precisely what another had already told, but it is not open to the objection of being cumulative if witnesses detail different circumstances all tending to the same result. As said by Mr. Justice GRANGER in *Boggess* v. *Read,* 83 Iowa, 754 (50 N. W. 43):

"In a literal sense that is cumulative that adds to what already is. Now, if a new trial is to be refused where it would be cumulative of evidence that tends to establish the ultimate facts or issues in the case, then the statute as to new trials for newly discovered evidence would be practically inoperative, because the application would always be because of cumulative evidence. Such a construction, so far as

we know, has never been given in the application of the law as to cumulative evidence. It is urged upon us, on the authority of *First Nat. Bank* v. *Charter Oak Ins. Co.,* 40 Iowa, 572, that, whenever the evidence is additional, then it is cumulative; but we think the case is authority only for a rule that, when the evidence is additional to other evidence on the same point, as distinguished from an ultimate fact, it is cumulative in the statutory sense. Now, as a defense in this case, the defendant attempted to show lewdness or adulterous conduct. On the trial already had, there was evidence of particular facts tending to show lewdness. Additional evidence as to such particular facts would be cumulative. But the showing of newly discovered evidence is that witnesses will testify to other acts from which the ultimate fact of lewdness may be found. The defendant purposes to prove acts not before attempted to be established. Such evidence we do not regard as cumulative, within the rule for denying a party a new trial.''

Closing Section 226, 1 Spelling on New Trial and Appellate Practice, the author sums up the distinction in these words:

''Upon all of which authorities and many more that might be cited, it is conclusive that, all other objections to newly discovered evidence being absent, the fact that it is cumulative is unimportant; and that it is not necessary for the intelligent and correct decision of a motion for a new trial in any case, where newly discovered evidence is relied on, to consider its cumulative character, except in aid of a decision of the question whether there is a probability of a different result upon a retrial.''

In *Fellows* v. *State,* 114 Ga. 233 (39 S. E. 885), the defense was that of alibi, and in granting a new trial the Supreme Court of that state held that evidence of detached facts not mentioned in the testimony at the

trial is not cumulative merely because they tend to prove the same ultimate fact, namely, that the defendant was not present at or a participant in the commission of the crime. In *People* v. *Vanderpool,* 1 Mich. N. P. 157, we find this language:

"The facts are different, though they establish the same conclusion. * * The evidence offered not being of the same fact, but of a different fact with the same logical bearing, cannot be considered as cumulative."

In *Fletcher* v. *People,* 117 Ill. 184 (7 N. E. 80), a new trial was granted on discovery of a written statement made by one of the state's witnesses concerning the affair, different from his testimony at the trial. That case was probably decided on the ground that this was evidence of a different kind from that given at the trial, namely, written, as opposed to oral, testimony. In *People* v. *Lapique,* 136 Cal. 503 (69 Pac. 226, 15 Am. Crim. 512), a new trial was granted to the defendant, so that he could introduce the admission of the prosecuting witness that he himself had signed the note which the defendant was accused of forging. *State* v. *Lowell,* 123 Iowa, 427 (99 N. W. 125), was a prosecution for bastardy, and it was held that evidence was not cumulative which fixed the dates of the prosecutrix' going to and leaving the defendant's employ longer than the period of gestation before the birth of her child, although other witnesses had testified to those dates. In that case the prosecutrix had given the dates between which she had been in the employ of the defendant, so as to include the time of her disgrace. The witness offered in support of a new trial fixed the time of her going there by the date of his mother's birthday, coupling that date with the circumstance of her entering the de-

fendant's employ. This the court held to classify it as corroborative, rather than cumulative, evidence. In *State* v. *Tyson,* 56 Kan. 686 (44 Pac. 609), the defendant was prosecuted for statutory rape of his minor daughter. The witnesses for the state, Sadler and his wife, identified them as being *in flagrante delicto* near the roadside when the Sadlers came up, and said that when they were discovered the father and daughter scrambled into a spring-wagon and rode ahead of the Sadlers until they came to the road, where they turned off. The daughter, testifying for the defendant, denied their presence there at the time or at all. It was held that the testimony of one who met the spring-wagon, and said the defendant and his daughter were not in the vehicle, was not cumulative, but corroborative. *State* v. *Bailey,* 94 Mo. 311 (7 S. W. 425), was a case where the indictment charged assault with intent to kill. One of the principal questions in the case was: Who began the affray? It was held that evidence of uncommunicated threats of the injured party was not cumulative to the evidence of the defendant that the prosecuting witness made the first assault. In *Able* v. *Frazier,* 43 Iowa, 175, the plaintiff sued the defendant to recover for lumber delivered. The defense was payment. The plaintiff contended in his testimony that the payment made had been applied on another account for some lumber used by the defendant in the building of a schoolhouse, and although the defendant testified directly that the payment was not on the schoolhouse lumber, yet testimony of the school officers to the same effect in support of an application for a new trial was held not cumulative. *Wayt* v. *Burlington etc. Ry. Co.,* 45 Iowa, 217, held that the admission of a party is not cumulative to direct testimony to the same effect.

*Waller* v. *Graves,* 20 Conn. 305, was an action by Graves against Waller for libel. Merwin, who originally wrote the article, testified that the words "rapacious creditor" were not in it when Waller signed it. The testimony of Averill, editor of the newspaper in which the libel was published, to the effect that he inserted the objectionable words without authority or knowledge of Waller, was held not cumulative. After discussing the subject, the court used this language:

"There are often various distinct and independent facts going to establish the same ground, on the same issue. Evidence is cumulative which merely multiplies witnesses to any one or more of these facts before investigated, or only adds other circumstances of the same general character. But that evidence which brings to light some new and independent truth of a different character, although it tend to prove the same proposition or ground of claim before insisted on, is not cumulative within the true meaning of the rule on this subject; as in the present case, Merwin testified only that the libel, as printed and published, was not like the paper written by him and signed by Waller, in the particular referred to. But now appears a new fact, entirely independent of the testimony of Merwin—one which did not exist at the time Merwin speaks of, which is that another person, without the knowledge or consent of either Waller or Merwin, inserted the objectionable words into the article which appeared in the newspaper."

In *Murray* v. *Weber,* 92 Iowa, 757 (60 N. W. 492), evidence of declarations of plaintiff's agent contrary to what he swore to at the trial was held not to be either cumulative or impeaching. The controlling reason of the decision seems to be that the declarations of the agent are those of his principal, which

need not be called to his attention before giving them in evidence from the mouth of another witness, and hence were original, rather than cumulative or impeaching, evidence. In *Means* v. *Yeager,* .96 Iowa, 697 (84 N. W. 513), although evidence of admissions was given at the trial, evidence of other and distinct admissions was held not cumulative, not being an attempt to give additional testimony as to those already appearing in evidence; that is to say, if one witness has given evidence of an admission made at a particular time and place, the evidence of other witnesses about that same admission would be cumulative, but they would not be so if the evidence related to another and distinct admission made at a different time and place: See, also, *German* v. *Maquoketa Bank,* 38 Iowa, 368; *Goldsworthy* v. *Town of Linden,* 75 Wis. 24 (43 N. W. 656); *Bigelow* v. *Sickles,* 75 Wis. 427 (44 N. W. 761). The principle seems to be that that testimony is cumulative which relates only to the precise detailed circumstance already narrated by another witness, but it is not cumulative if it relates to other circumstances, although they tend to prove the same general result.

Applied to the instant case, it seems that the testimony of Milom Jones, although negative in its character, that he was about the Grants Pass station frequently during the afternoon of September 13th, and that neither the defendant nor his wife was there, is a new and independent circumstance of which the defendant should have the benefit. The same is true of the testimony of W. E. Thomas, who, at the time of the trial, as the record discloses, was at San Diego, California, to the effect that he was riding with the defendant between half-past 6 and 7 o'clock on the evening of September 13th at Medford, discloses a

new and independent circumstance. Likewise, the
testimony of Sandry respecting the repairs on the
Chalmers car made by the defendant on the afternoon
of September 13th, and his trying out the same on the
next morning, relates to an independent circumstance.
So, also, the testimony of other witnesses about the
purchase of and settlement for the vacuum tank and
its gasket, mentioned in the evidence, details new cir-
cumstances arising from and connected with that
transaction, all of which would be favorable to the
defendant. It is true that the defendant participated
in all of these occurrences, and that according to the
hard technical rule he should have remembered them
and testified to them. But even if he did, it is plain
common sense that the evidence of disinterested wit-
nesses would be evidence of another character, differ-
entiated by its very disinterestedness from the testi-
mony of the defendant himself, which confessedly is
from the mouth of a witness interested in his own
behalf. It is therefore not evidence of the same char-
acter. In justice the two classes of testimony should
be distinguished, and the defendant should have the
benefit of the declarations of disinterested witnesses.

In the case of *State* v. *Ausplund,* 86 Or. 121 (167
Pac. 1019), cited in support of the denial of the mo-
tion, the defendant knew, not only the circumstance
which he proposed to offer in evidence on a new trial,
but knew the witness by whom he could prove the
same, and that she was within the reach of a sub-
poena, but excused her from testifying, from motives
of delicacy. *Stern* v. *Volz,* 52 Or. 597 (98 Pac. 148),
was a civil case involving the whereabouts of the de-
fendant at the date he was said to have executed an
instrument at North Bend, Oregon. There was tes-
timony tending to show that on the same day he was

at Boise, Idaho. The new witness did not propose to testify any more than to the bare fact that on that date he was at Boise, Idaho, without mentioning any particular circumstance to support his bald declaration. In *State* v. *O'Donnell,* 77 Or. 116 (149 Pac. 536), the newly proposed evidence was plainly impeaching in its character. As to diligence, we find the defendant's case discloses that he was inquiring of his employers about evidence respecting his presence at Medford, and that they disclaimed knowledge of anything in his benefit, until after the trial their recollection was refreshed by the investigation of Sandry.

6. It is said that the decision of the trial court on a motion for a new trial will not be disturbed except for an abuse of discretion, and that such an abuse must plainly appear. Basing his opinion, as he did, upon the civil cases of *Webb* v. *Isensee* and *Archambeau* v. *Edmunson,* which are characterized by the dispute involving more than $20 in value, the learned trial judge abused his discretion by abjuring it. Under the judicial system as it existed before the amendment, which is preserved by that very amendment in the absence of legislation changing it, he did have discretion to grant a new trial for what is clearly corroborative, and not merely cumulative, evidence. Instead of assuming that discretion, he was misled by the precedents cited into denying it; and, as we view the testimony offered in support of the motion for a new trial, we think justice would require a new trial, because the additional showing of alibi is so strong that it is reasonably probable the result of a second trial would be favorable to the defendant.

7–9. There are other errors assigned which ought not to recur at a new trial. The prosecuting witness went to Klamath Falls after the defendant was arrested there and in jail, and in company with the sheriff identified the defendant as the man who robbed him, giving in detail the conversation between himself and the defendant in the jail. It seems from the bill of exceptions that the defendant's counsel made no objection to the admission of this testimony in chief. The defendant also gave his version of the meeting between himself and the prosecuting witness at the jail at Klamath Falls, to the effect that he strongly protested that he did not rob the witness and had never seen him before. But after the case of the defendant was finally rested, the state called the sheriff of Klamath County, and had him testify to, the effect that the prosecuting witness identified the defendant as the man who robbed him, all over the objection of the defendant that it was immaterial, irrelevant, not competent and not rebuttal; and this is noted as one of the assignments of error. , The issue was whether the defendant robbed the prosecuting witness. Applicable to that issue was the question whether at the trial the prosecuting witness could identify the defendant as the man who committed the crime. Whether he identified him at any other time or place, either before or after the trial, would be immaterial, and in a sense a self-serving declaration. It ought not to have been admitted in the first place, although no objection was made to it. It was clearly not rebuttal, and it had the effect of giving the state the last chance to testify in support of its case. In *State* v. *Hunsaker,* 16 Or. 497 (19 Pac. 605), it was held that in a criminal case the state cannot be permitted to withhold a part of its evidence

in chief and then introduce it in rebuttal after the defendant has rested his case. Like doctrine is laid down in *State* v. *Minnick,* 54 Or. 86 (102 Pac. 605). In the instant case there was no request for the court to reopen the case, as in *State* v. *Merlo,* 92 Or. 678 (173 Pac. 317, 182 Pac. 153). In prescribing the order of proceedings on trial, Section 132, L. O. L., indeed says that after the plaintiff has introduced evidence on his part and has concluded, and the defendant has done the same, "the parties may then respectively introduce rebutting evidence only, unless the court, for good reasons and in furtherance of justice, permit them to introduce evidence upon the original cause of action, defense or counterclaim." Some good reason should appear for separating the state's case into parts and giving a portion in chief and another in rebuttal. Permission should not be granted arbitrarily out of hand. The objection should have been sustained on the ground that the testimony was not rebuttal. The evidence as to identification at Klamath Falls should have been rejected.

10. We are not unmindful of the principle laid down in Section 727, L. O. L., that evidence may be given of "a declaration or act of another, in the presence and within the observation of a party, and his conduct in relation thereto." Under this section, if the state chose to introduce as part of its case the defendant's strong protestation of his innocence in the conversation in the jail at Klamath Falls, it might do so, but it would be clearly immaterial to introduce it as showing identification of the defendant by the prosecuting witness.

11. We are of the opinion that the defendant should have had the benefit of the evidence set out in the affidavits in support of his motion for a new trial,

for the reasons that it was not cumulative, and that, in our judgment, it would probably lead to a different result in the end. By this we do not intimate what should be the future verdict. That is exclusively for the jury, acting under proper instructions from the court, after having received only legal evidence for its consideration. The fact of the defendant's guilt or innocence has not been nor will it be otherwise re-examined than by a jury trial.

For the reasons indicated, the judgment is reversed, and the cause remanded to the Circuit Court for a new trial.          REVERSED AND REMANDED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.

---

Denied December 14, 1920.

PETITION FOR REHEARING.

(193 Pac. 927.)

The State, as respondent, files petition for rehearing.          REHEARING DENIED.

*Mr. I. H. Van Winkle*, Attorney General, and *Mr. G. M. Roberts*, District Attorney for Jackson County, for the petition.

*Mr. Gus Newbury, contra.*

HARRIS, J.—The state has petitioned for a rehearing. It is contended that an order denying a motion for a new trial is not appealable, cannot be assigned as error and cannot be reviewed by this court; and in support of this contention the state cites *State* v. *Pender*, 72 Or. 94, 108 (142 Pac. 615),

and *State* v. *Frasier,* 94 Or. 90, 107 (180 Pac. 521, 184 Pac. 848).

12. An order denying a motion for a new trial is of course not appealable; for, if reviewable at all, it can only be reviewed by an appeal from the judgment against which the motion was directed. The order denying the motion is reached by appealing from the judgment rendered in the case.

The Code expressly recognizes the right of a disappointed litigant to ask for a new trial, if for any of the reasons specifically enumerated by the statute a substantial right of such litigant has been materially affected; and among the several reasons we find the following:

"Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial": Section 174, subd. 4, Or. L.

Subdivision 6 of this section authorizes the court to grant a new trial because of an "insufficiency of the evidence to justify the verdict or other decision, or that it is against law."

Section 174, Or. L., has been brought to the attention of this court many times. The following constitute a considerable number, though not all, of the many precedents in which Section 174 has been noticed: *Bowen* v. *State,* 1 Or. 271; *State* v. *Fitzhugh,* 2 Or. 227, 236; *State* v. *Wilson,* 6 Or. 429; *Hallock* v. *Portland,* 8 Or. 29, 30; *State* v. *McDonald,* 8 Or. 114, 118; *State* v. *Becker,* 12 Or. 318, 319 (7 Pac. 329); *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. 309); *State* v. *Roberts,* 15 Or. 187, 198 (13 Pac. 896); *State* v. *Clements,* 15 Or. 237, 243 (14 Pac. 410); *Beckman* v. *Hamlin,* 23 Or. 313, 319 (31 Pac. 707); *State* v. *Foot You,* 24 Or. 61, 70, 73 (32 Pac. 1031, 33 Pac. 537);

*Elder* v. *Rourke,* 27 Or. 363, 367 (41 Pac. 6); *State* v. *Childers,* 32 Or. 119, 128 (49 Pac. 801); *State* v. *Gardner,* 33 Or. 149, 152 (54 Pac. 809); *McCormick Harvest Machine Co.* v. *Hovey,* 36 Or. 259, 260 (59 Pac. 189); *State* v. *Crockett,* 39 Or. 76, 81 (65 Pac. 447); *Crossen* v. *Oliver,* 41 Or. 505, 508 (69 Pac. 308); *Ruckman* v. *Ormond,* 42 Or. 209, 212 (70 Pac. 707); *First Nat. Bank* v. *McCullough,* 50 Or. 508, 515 (93 Pac. 366, 126 Am. St. Rep. 758, 17 L. R. A. (N. S.) 1105); *Manning* v. *Portland Shipbuilding Co.,* 52 Or. 101, 103 (96 Pac. 545); *Fassett* v. *Boswell,* 59 Or. 288, 290 (117 Pac. 302); *Stark* v. *Epler,* 59 Or. 262, 268 (117 Pac. 276); *Abercrombie* v. *Heckard,* 68 Or. 103, 104 (136 Pac. 875); *In re Sneddon,* 74 Or. 586, 591 (144 Pac. 676); *White* v. *Geinger,* 70 Or. 81, 82 (139 Pac. 572); *Wallace* v. *Portland, R. L. & P. Co.,* 88 Or. 219, 225 (159 Pac. 974, 170 Pac. 283).

13, 14. Although there may have been an occasional discordant note among the many reported opinions of the court, yet it must now be accepted as an established rule that the denial of a motion for a new trial cannot be assigned as error, and will not be reviewed on appeal where the motion is based upon an alleged insufficiency of the evidence. This established rule is simply the natural result of conditions. The fact of the insufficiency of the evidence in any given case can always be known before the cause is submitted to the jury; and hence the defendant is always afforded an opportunity to question the sufficiency of the evidence, for he may move for a nonsuit at the close of the plaintiff's case in chief, or move for a directed verdict when both parties have rested, and in that manner preserve the record, so that upon appeal the question of the sufficiency of the evidence may be reviewed.

Quite a different situation is created, however, where the motion for a new trial is based upon newly discovered evidence. In such a case the trial has been completed and the verdict of the jury has been returned; and the very purpose of allowing the motion for a new trial is to afford a remedy for a fact situation which becomes known after verdict, and could not with reasonable diligence have been known before the completion of the trial. The basic difference between the two classes of cases is discussed and recognized in *State* v. *Hill,* 39 Or. 90, 96 (65 Pac. 518, 520), for there this court said:

"While the rule is well settled in this state that the action of the trial court on a motion for a new trial on account of any matter within the knowledge of a party prior to the submission of the cause to the jury is not reviewable on appeal, and therefore cannot be assigned as error (citing cases), yet when anything occurs after the cause has been submitted which tends to subvert justice, or shows that a fair trial has not been had, and which by the exercise of reasonable diligence on the part of the defeated party could not have been ascertained or prevented, his affidavit and motion for a new trial, predicated upon such matters, presents a question which the court should weigh and decide with care, and whenever its judgment thereon is manifestly wrong it will be reviewed on appeal."

The controlling principle which is announced in *State* v. *Hill,* 39 Or. 90, 96 (65 Pac. 518), is also recognized and approved in *Ruckman* v. *Ormond,* 42 Or. 209, 212 (70 Pac. 707); *Goodeve* v. *Thompson,* 68 Or. 411, 417 (136 Pac. 670, 137 Pac. 744); *Stern* v. *Volz,* 52 Or. 597, 598 (98 Pac. 148); *Colgan* v. *Farmers & Mechanics' Bank,* 59 Or. 469, 475 (106 Pac. 1134, 114 Pac. 460, 117 Pac. 807). See, also, *Tucker* v. *Flouring Mills Co.,* 13 Or. 28, 34 (7 Pac. 53);

*Mitchell & Lewis Co.* v. *Downing,* 23 Or. 448, 454 (32 Pac. 394); *Barclay* v. *Oregon-Wash. R. & N. Co.,* 75 Or. 559, 561 (147 Pac. 541); *State* v. *Mims,* 36 Or. 315, 327 (61 Pac. 888); *State* v. *Magers,* 36 Or. 38, 53 (58 Pac. 892); *State* v. *Smith,* 43 Or. 109, 118 (71 Pac. 973); *Territory of Oregon* v. *Latshaw,* 1 Or. 146; *Lander* v. *Miles,* 3 Or. 40, 43; *State* v. *Ausplund,* 86 Or. 121, 139 (167 Pac. 1019); *Portland & O. C. Ry. Co.* v. *Sanders,* 86 Or. 62, 77 (167 Pac. 564); *Crossen* v. *Oliver,* 41 Or. 505, 508 (69 Pac. 308); *Fassett* v. *Boswell,* 59 Or. 288, 290 (117 Pac. 302); *State* v. *Parr,* 54 Or. 316, 324 (103 Pac. 434).

15, 16. Frankness compels the admission that complete harmony does not run throughout all the decisions dealing with Section 174, Or. L., for there are many precedents which contain statements which, standing alone and literally construed, undoubtedly support the position now taken by the state; and, moreover, it must be conceded that there are a few decisions which cannot be logically harmonized with the holding in *State* v. *Hill.* However, any broad and comprehensive language found here and there among the many precedents should be read in the light of the facts under discussion; and, when such language is so read, it will appear, in despite of some discordancy, whether real or seeming, that it is now the rule that an order denying a motion for a new trial is assignable as error, and will be reviewed on appeal if the motion is based upon newly discovered evidence. Of course, the ruling of a trial court will not be disturbed unless there has been an abuse of discretion. A party is entitled to the exercise of a judicial discretion by the trial judge; and, if there has not been the exercise of such a discretion, the party has, to

that extent, failed to receive that which the law gives him.

In the instant case the motion was based upon a cause materially affecting the substantial right of the defendant. The trial court was of the opinion that under the provisions of Article VII, Section 3 of the present state Constitution it was without power to disturb the verdict of the jury, and for that reason the Circuit Court declined to examine into the merits of the motion for a new trial. We did not remand the cause with directions to the Circuit Court to pass upon the motion for a new trial; but, since in our view a refusal by the trial court to grant a new trial would in the face of the showing made by the defendant be an abuse of discretion, we directed the granting of a new trial. In other words, even if the trial court had, after an examination of the motion and affidavits filed by the defendant, refused to grant a new trial, we would have held that such refusal was tantamount to the abuse of judicial discretion.

We adhere to our former opinion. The petition for a rehearing is denied.

REVERSED AND REMANDED FOR NEW TRIAL.

REHEARING DENIED.